## SECURITIES AND EXCHANGE COMMISSION v. OKIN.

### Civ. No. 169.

District Court, S. D. New York.

Oct. 11, 1944.

Edward H. Cashion, Mayer U. Newfield, and Sidney H. Willner, all of Philadelphia, Pa., Samuel Binder, of Brooklyn, N. Y., and John J. Prendergast, of New York City, for Securities and Exchange Commission.

Samuel Okin, of New York City, pro se.

BRIGHT, District Judge.

Plaintiff, by this motion, seeks a temporary injunction restraining the defendant from exercising any power conferred in any proxy received by him as a result of his solicitation in connection with the annual meeting of stockholders of Electric Bond & Share Company, scheduled to be held on October 11, 1944, or any adjournment thereof, upon the ground that the printed statement sent out by defendant to stockholders in which he requested such proxies is, in some respects, false or misleading and violates section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78n (a), and of Regulation X-14 adopted thereunder, and section 12(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79*l* (e) and Rule U-61 thereunder.

Defendant is the owner and holder of 9,000 shares of the common stock of the Bond & Share Company.

Jurisdiction is not questioned. It is conferred by section 27 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa, and section 25 of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79y.

Section 14(a) of the Securities Exchange Act makes it unlawful for any person, by the use of the mails, to solicit any proxy, consent or authorization in respect of any security registered on any National Securities Exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. Section 12(e) of the Public Utility Holding Company Act is to the same effect.

Under Regulation X-14, which it is not disputed was adopted by the plaintiff, it is provided, among other things, that (1) three preliminary copies of the proxy statement and form of proxy shall be filed with the Commission not later than ten days prior to the date definitive copies are first sent out (Rule X-14-A-4(a)); (2) three definitive copies of the proxy statement, form of proxy, and any additional material furnished to security holders, shall be filed not later than the date such material is first sent or given to any security holder (Rule X-14-A-4(b)); and (3) no such solicitation shall be made by means of any form of proxy or other communication containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact or omits to state any material fact necessary in order to make the statements therein not false or misleading.

It has been held in previous litigation of a similar character between the parties to this suit that the plaintiff has power to regulate the contents of and the issuance and mailing of a proxy statement of the character herein involved, even though it does not expressly solicit proxies, as this one does, and to require a statement of material facts necessary to make the assertions therein not false or misleading. Securities and Exchange Commission v. Okin, 2 Cir., 132 F.2d 784-786. A false or misleading opinion as to one of the specific topics in such statement may be prohibited. Securities and Exchange Commission v. Okin, 2 Cir., 137 F.2d 862, 864. And the granting of an injunction to restrain the violation of the rules and regulations in the respects mentioned is proper. Securities and Exchange Commission v. Okin, 2 Cir., 139 F.2d 87. This case, however, goes a step farther than any of the cases cited above or any other case to which my attention has been called. Here it is sought to restrain, not only the making of false or misleading statements, but also to restrain the use at the annual meeting of proxies obtained by defendant as a result of sending out any statement which is held to be violative of the rules mentioned.

It is not disputed that the preliminary statement and form of proxy and the definitive form were filed as required by the above rules. After the filing of the preliminary statement, the Commission

made certain suggestions as to its modification or correction, which suggestions, in the instances now under attack, were disregarded by the defendant and are now the subject of complaint in this action. The definitive form sent out by defendant is claimed to be false or misleading in eight particulars and they will be treated in the order mentioned in the complaint.

It is to be observed that defendant seeks proxies to accomplish his election as a director of the Bond & Share Company, and the condemnation by the stockholders of the present board of directors, by their defeat for re-election. His criticisms set out in his letter soliciting proxies may be said to be fourfold—that the management (1) is seeking to waste $12,000,000 of assets of Bond & Share; (2) has failed and will continue to fail to use the assets of the corporation in the reduction of its preferred stock except by purchases in the open market and thus make available net income for declaration of dividends on common stock; (3) has failed to utilize income to provide dividends for common stockholders; and (4) its failure to insist upon payment of $30,000,000 alleged to be owed to Bond & Share by its subsidiary, American & Foreign Power Company.

Thus defendant writes on pages 1 and 2 of his statement that the management of Bond & Share, after conferences with the staff of plaintiff and others, now proposes by agreement to accept from the United States Gas Corporation $44,000,000 in place of $56,665,000 of company assets, "which agreement it is my opinion is an attempt to waste approximately $12,665,000 of the assets of the Electric Bond and Share Company". The statement contains other information showing how the defendant has arrived at the amount of the claim of Bond & Share against United. He also writes that Bond & Share does not intend to call a meeting of stockholders for approval of this transaction, that in his opinion the proposed transaction constitutes an outrageous attempt to unlawfully waste corporate assets beyond the legal authority of the directors of Bond & Share; that in his opinion, the activities of the staff of plaintiff which have been most instrumental in causing this unconscionable result and the order of Commission of September 7, 1944, approving the transaction, were and are without authority in law and contrary to the intent of the Public Utility Holding Company Act of 1935, that no fact found by the Commission predicated on any evidence in any way affects the debts owing by United to Bond & Share, and that he has taken an appeal from the order of the Commission. He omits to state that on September 7, 1944, the Commission, after a public hearing of which appropriate notice was given to stockholders of the respective companies and in which some of them participated, made an order under section 11 (e) of the Public Utility Holding Company Act, 15 U.S.C.A. § 79k (a), approving the plan of the sale and transfer of the assets mentioned by Bond & Share for a cash price of $44,000,-000, but which order provided that it should not be operative to authorize the consummation of any such transaction until a proper United States District Court shall enter an order enforcing the plan; and that the appropriateness and fairness of such proposal are now before the United States District Court for the District of Delaware, which must determine that such proposal is appropriate, fair and equitable before the proposed transaction can be consummated. This omission was called by the plaintiff to the defendant's attention after the receipt of his preliminary statement and was disregarded when he sent out the one now criticized.

In view of the statements by defendant in his proxy solicitation that the proposed acceptance of $44,000,000 in satisfaction of the claim constitutes an outrageous attempt to unlawfully waste corporate assets beyond the legal authority of the directors, that the activities of plaintiff's staff had been most instrumental in causing such unconscionable result, that the order of the Commission was without legal authority and contrary to the facts, and that the management of Bond & Share did not intend to call a meeting of the stockholders for approval of the transaction, I think that the statement should have been supplemented in the manner suggested by the Commission so as to show not only that the order of September 7, 1944, was made on notice and after participation by the stockholders of Bond & Share in the hearing, in purported compliance with the terms of the Public Utility Holding Company Act and was now before the United States District Court for approval. Otherwise, the defendant's statements were clearly misleading.

The Acts in question were clearly adopted by Congress to protect the interest of investors in securities, to require the giving to them of information necessary to appraise the financial position of such securities, and to furnish them with information which would enable them to act intelligently in the giving of proxies and in other transactions in the companies in which they held securities. Certainly, a one-sided statement, even if true, made by a person seeking proxies for his individual benefit does not tend to this end.

There is no question that the insertion suggested states the true fact. Defendant, however, denies this and contends that he cannot be required to insert in his proxy statement facts which he knows are not true. But a reading of his affidavit does not disprove their accuracy which is sustained by documentary evidence attached to the moving affidavit. A reading of defendant's opposing affidavit reveals that it is his contention, not that such an order was made on notice and that approval of the same is now being sought as provided by statute, but that the Commission had no statutory authority to make the order, that the plan approved by it does not come within the provisions of the Public Utility Holding Act, and that the District Court has no jurisdiction to enforce such plan. But this assertion could have been included in his proxy statement.

It is further stated that the "management of Electric Bond and Share has heretofore failed to employ major assets of the company to expeditiously and speedily reduce the preferred stock and thereby prevent" a deficiency, by refusing to seek tenders of preferred stock, but, on the contrary, has purchased such stock in the open market, which method has been so slow and ineffective as to cause a deficiency of $4,989,840, which will substantially increase under present income. It further states that "It is obvious that it will take approximately four years to expend the $44,000,000. (referred to above) which the management of the company has obtained permission to use in the open market in the purchase of the company's preferred stock, when it receives said amount", during which time, as stated above, the deficiency would materially increase to the detriment of the common stockholders. The letter does not state that the Commission, in its order of September 7, 1944, after hearing the testimony of the president of Bond & Share,

found that it was of the opinion that the open market purchase program contemplated would prove to be only a stopgap, that it could not allow a long drawn out program to interfere with the resolution of the problems of Bond & Share, but that it would be more feasible to formulate and pass upon a more comprehensive program at the time of the consummation of the plan or thereafter, in other words, when the $44,000,000 were paid. It seems to me that the insertion in the letter of the statement that the Commission in its order, and the management of Bond & Share, contemplated a plan which would accelerate the retirement of the preferred stock, would tend to eliminate the possibility that the recipient of the proxy statement would be misled and instead of inferring that there was no such plan susceptible of prompt execution, or that none was even contemplated, he could know that both the Commission and the Bond & Share management were to formulate and consider the matter after the $44,000,000 were received. In this respect, I find that the proxy statement was misleading.

Here again the insertion requested by the Commission to be added to defendant's letter states the fact, as appears by documentary proof, and is not disputed by defendant. His statement that the testimony of the president was wishful thinking and insufficient as the basis upon which to predicate any definite statement has no legal significance, and may never materialize, and that defendant has no confidence in it is not a denial or an answer. His printed statement might mislead unless it were also stated that the Commission still retained jurisdiction to pass on the use of the money.

Defendant further writes that the investment of Bond & Share of $350,000,000 in stock interests in five of its subsidiaries earned in twelve months $8,000,000, equivalent to $1.50 on each share of common stock, before payment of taxes, assuming that preferred stock were eliminated. This assertion fails to take into account or to state, as it should if it were not to mislead, that a large part of such income represented a consolidated earning upon the common stock of two of those subsidiaries, against which there were definite arrearages of over $100,000,000 upon preferred stock of such subsidiaries.

Documentary proof is submitted showing this to be so and establishing that but a small part of such earnings could be available to the stockholdings of Bond & Share in such companies. Defendant's statements, if not clearly false, are certainly misleading in that they fail to show these facts.

Defendant avers, however, that because a corporation may have cumulative arrearages on its preferred stock, which have not been declared, such a condition does not prevent a stockholder from calculating earnings on common stock, after making allowance for preferred stock dividend requirements, irrespective of whether the same have been declared or not. A statement, however, of what may have been "earned", without some further statement that it cannot be "paid", is, to say the least, not a fair representation.

The statement is further made (seventh paragraph, page 3) that defendant is of the opinion that since National Power & Light Company has no outstanding preferred stock and has been ordered to dissolve, he is of the opinion that "there is no legal obstacle preventing" that company "from distributing its consolidated net income to its common stockholders or distributing its assets among its common stockholders, which would result in Electric Bond & Share Company receiving the major part of" $1,930,742. The fact is, and it is not stated, that the plaintiff commission on November 3, 1941, made an order that the National Light & Power Company should not cause or permit two of its subsidiaries to declare or pay dividends upon their common stock beyond a certain amount. Here is a plain misstatement of fact.

Defendant does not dispute that such an order was made. He does contend that because the dissolution of the National Power & Light Corporation was not complied with within two years, the Commission has lost jurisdiction and the power to restrict the payment of dividends by any subsidiary or the distribution of assets; and in other respects, that the Commission is violating the law. But this contention does not erase the misleading statement that there is no legal obstacle preventing the distribution of income and assets. There is the order which has some presumption of validity and which should have been called to the attention of the

recipients of defendant's letter. There could be no objection to a further statement of defendant's claim of invalidity.

I cannot see that the other statements in the proxy letter referred to in subdivisions 10 (c), (f), (g) and (h) of the complaint come within the condemnation of the acts mentioned or the regulations adopted thereunder. Subdivisions (c), (f) and (g) substantially state the facts. It is obvious from the defendant's letter that the preferred stock must be retired to enable the common stock to benefit. It is not necessary to restate that to offset the statements criticized in (c). The statement criticized in subdivision (f) and appearing in the first seven paragraphs of the fourth page (not the third page, as alleged) of the proxy statement does not criticize the directors for failure to obtain payment of the $30,000,000 debt obligation of the American & Foreign Power Company; it criticizes their action in seeking such payment $5,000,000 in cash and $30,000,000 in 3% notes, and specifically mentions that the Commission restricted payment unless it approved it later. The statement in subdivision (g) that the Commission sought to dismiss defendant's appeal from that order on the ground that he had no statutory authority to prosecute it, is true so far as it goes, and his failure also to state that one of the grounds was that his appeal was frivolous does not and did not mislead in my opinion. The motion to dismiss was denied, the court holding that defendant had "standing to sue" and that it had no jurisdiction to determine that the appeal was frivolous. Okin v. Securities and Exchange Commission, 2 Cir., 143 F.2d 945. And, finally, the criticism in subdivision (h) of defendant's statement that in his opinion he has the right to vote the stock cumulatively does not mislead. It is his opinion and may or may not be legally correct. I do not think it necessary upon this motion to determine the question. In my judgment those who were willing to authorize defendant to vote for them would not be influenced in any way in their determination to sign or not to sign by the fact that the stock might be so voted. They obviously did not intend personally to exercise that right, and they would be willing to have him vote, not because he might increase the count, but rather to elect himself as a director in an attempt to remedy the conditions of which the defendant complains.

It is obvious from the foregoing that the proxy statement under which proxies for the meeting of Bond & Share may have been obtained by defendant was, to the extent mentioned, false or misleading, as I have already found. Proxies were thus obtained by defendant for his personal benefit—his election as a director of the company—and for no other purpose. Having obtained them in violation of the law and regulations, he should not be permitted to use them, and he will be enjoined from so doing.

I cannot see that any further injunction is necessary. The proxy statement has gone out. He cannot be enjoined from doing something already done. There is no sufficient showing that he has threatened or intends to violate again the regulations mentioned.

I am troubled, however, by the fact that the granting of this injunction will disenfranchise those common stockholders who may have given proxies to the defendant. Of course, I am not in a position to help that situation because neither the corporation nor those stockholders are before me. It seems but fair, however, and I feel inclined to suggest, that they be given an opportunity to exercise the right which their stock holdings entitle them to. I cannot see that I am in power to do more than to suggest.

An order to be entered hereon will comply with the appropriate rules relating to injunctions.