JACOB WIRTH, et al., vs. JOHN FEHLBERG et al.

JUNE 29, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Corporations.  By-Laws.  Election.  Construction of By-laws by Stock-*
*holders.*

By-laws of a corporation provided, "The election of directors shall be by nom-
ination and ballot; those receiving the largest number of votes being
elected."

Complainants and respondents each received votes for the office of director,
complainants having been orally nominated prior to the balloting and hav-
ing their names printed on the ballots, and respondents not having been
nominated for said office otherwise than by having their names written
upon the ballots as candidates in opposition to those orally nominated.
Respondents received a larger number of votes and were declared elected:—

*Held*, that, where the name is written or printed on the ballot it might well be
called a nomination and ballot, because it is itself evidence of both.

*Held*, further, that a form of ballot which required not only marking the name
of the candidate written or printed thereon with a cross, but the signature
of the voter thereto, and which contained an invitation printed thereon, to
use certain blank lines "for any other name you may care to vote for,"
was a contemporaneous construction of the requirements of the by-law, in
that respect, by the person who framed the ballot, and as it was used, and
thus approved, by the stockholders, became their construction by adoption,
and both the spirit and letter of the by-law were complied with, and re-
spondents duly elected to the office.

Blodgett and Johnson, JJ., concurring, Parkhurst and Sweetland, JJ., dis-
senting.

PETITION IN EQUITY in nature of *quo warranto.*  Denied
and dismissed.

DUBOIS, C. J.  This is a petition in equity in the nature of
*quo warranto,* brought, under the provisions of Gen. Laws, 1909,
cap. 328, to determine the title to the office of directors in the
Narragansett Brewing Company, as between the complainants
and respondents.  The case was tried upon an agreed state-
ment of facts which included as exhibits a copy of the by-laws
of said corporation and a sample of the ballots used in the
election hereinafter referred to.  The complainants and re-
spondents each received votes for said office at the annual

meeting of the corporation; the complainants having been orally nominated therefor prior to the balloting and having their names printed upon the ballots cast at said election; and the respondents not having been nominated for said office otherwise than by having their names written upon the ballots as candidates in opposition to those so orally nominated. The respondents severally received a larger number of the votes so cast at said election than did the complainants, and the respondents were accordingly declared elected to said office and have since performed the duties and claimed the privileges incident thereto. The complainants contend that they were duly elected directors at said election, and that the votes cast for the respondents were void because said respondents had not been orally nominated as candidates for said office in accordance with that portion of the provisions of article 1, section 1, of the by-laws of said corporation, which reads as follows: "The election of directors shall be by nomination and ballot, those receiving the largest number of votes being elected." The election of directors in the present case was by nomination, and ballot, and those receiving the largest number of votes, viz.: the respondents, were declared elected. The complainants, in effect, claim that they were elected without opposition, because no other candidates were nominated at the time of their nomination. But nomination is not equivalent to election, and the election is what is in question. There are many ways of ascertaining the will of the majority in an election, as, for instance, by a *viva voce* vote, or by a show of hands, or by dividing the house, or by ballot, and there are various kinds of ballots. The word "ballot" indicates a little ball, and it is common knowledge that little balls are used in social clubs and other society elections to determine whether a candidate for membership shall be admitted or not, and usually this is determined by the presence of one or more black balls, which are generally sufficient, under the rules, to defeat the election. In such balloting it is absolutely necessary to name the candidate before the balloting in order that the voters may know for or against whom they are voting. And in balloting with paper

ballots marked, respectively, "yes" and "no" it would be just as necessary to name the candidate. But where the name is written or printed on the ballot it might well be called a nomination and ballot, because it is itself evidence of both. By simply counting the ballots and names thereon the election, except in the case of a tie vote, is determined. See *In Re Voting Machine,* 19 R. I. 729. As in corporate elections the result is to be determined by the number of shares of stock voted for or against the respective candidates, it was eminently proper to provide for a ballot which should contain the names of the candidates for corporate offices. Such a ballot was provided and used at the election in question, as appears in the agreed statement of facts, Exhibit "B," which reads as follows:

## "Exhibit 'B.'

Mark a cross (X) in the square at the right of each name *you wish to vote for.*

The blank lines are for any other name you may care to vote for.

(Vote for nine names only)

| | |
|---|---|
| C. A. Moeller | |
| | |
| Jacob Wirth | |
| | |
| Henry R. Wirth | |
| | |
| V. Germershausen | |
| | |
| A. Albert Sack | |
| | |
| C. Robert Moeller | |
| | |
| R. L. Kautz | |
| | |
| Geo. Wilhelm | |
| | |
| Adolph Massman | |
| | |

If voting on a proxy state whose it is here

Sign your name here

It appears from the foregoing that the voters were not only expected to mark the ballots with a cross, but were required to sign their names thereunder; so there was to be no attempt at secrecy in the matter. This form of ballot may well be taken to be a contemporaneous construction of the requirements of the by-law in that respect by the person who framed the ballot; and as it was used, and thus approved, by the stockholders, it may be said to have become theirs by adoption. It contains an invitation to use the blank lines "for any other name you may care to vote for." The friends of the respondents availed themselves of the opportunity, and elected them. Whatever criticism may be made concerning the nominations or lack of them, there was no subtlety in the election, the signed ballots were conclusive proof of the identity of the persons who assumed this responsibility. It can not be said that they sheltered themselves behind a secret ballot, for these ballots are not, and cannot be, secret.

The largest number of votes have elected the directors. The spirit and, we believe, the letter of the by-law have been complied with. The will of the majority has been definitely ascertained, and the petitioners have no just ground of complaint.

In these circumstances the petition must be denied and dismissed.

JOHNSON, J., concurs.

BLODGETT, J., concurring.

The contention of the complainants is, in effect, that the placing of their candidates in nomination was sufficient, without more, to elect them, since no opposing candidates were similarly nominated; and it follows that, if this contention be correct, although every stockholder except the nominator were opposed to each one of these candidates, he could not oppose them effectually unless the names of other candidates were in like manner publicly placed before the meeting, and so their choice is restricted to such candidates only. Obviously a stockholder must vote for B. in order to defeat A. If he

merely abstains from voting, or is deprived of the property right of voting on his stock, he does not thereby either defeat A. or elect B. It follows that if but one set of candidates is so nominated, there is no opportunity for a choice or an election of any kind. Candidates so nominated are the appointees of the nominator, and not the choice of the body. Such a construction of a by-law ought not to be adopted, especially to defeat the will of stockholders casting a clear majority of all the votes cast at said election, as is the case at bar. Even in the case of an election to public office it has been held by this court, in *State* v. *Carroll*, 17 R. I. 591, which was a proceeding in *quo warranto* to test the validity of the election of the respondent as mayor of Pawtucket, which was questioned on the ground that the statute required seven days' notice of the election in question and that the notices therefor were posted but one day prior thereto, inasmuch as it appeared (p. 603) "that the electors had full and actual notice of the election on December 5th, and that no voter was in any way hindered or impeded in the exercise of his right of suffrage, and that the result of said election was in no wise affected by the failure to give a longer notice, and that a full and fair expression of the popular will was had at said election; that the respondent received, at said election, 2,150 votes, which number was sufficient, not only to constitute a majority of the votes cast at said election, but also a majority of the votes cast at any of the three elections preceding, and a majority of the highest number of votes cast in the city of Pawtucket at any election ever held therein; and that the result of said election could not have been changed save by the attendance of 1,181 additional voters, all voting against the respondent; and that no election of any other candidate could have been had save by the attendance of 1,599 additional voters, all voting against the respondent and for one of the other candidates," that accordingly there had been a full and fair expression of the electorate and that the election was valid.

Similar considerations may be invoked in aid of the election in the case at bar. No question is made, in any way, as to the

conduct of the election in any other respect than the one here before the court. And the respondents have received a clear majority of all the votes cast at said election, the respondent having the least number of votes having received 5,685 votes out of a total of 9,779 represented thereat.

This expression of the will of the majority should be respected.

I concur in the order dismissing the petition.

SWEETLAND, J., dissenting. I can not agree with the opinion of the majority of the court. The respondents were not elected to office as directors of the Narragansett Brewing Company, a corporation, are not entitled to hold and exercise said offices, and should be ousted therefrom. In accordance with the by-laws of said corporation, the annual meeting for the election of the nine directors of said company was held on the fifteenth day of April, 1910. The provision of the by-laws for the election of directors is as follows: "The election of directors shall be by nomination and ballot, those receiving the largest number of votes being elected." The meaning of this provision is perfectly plain. It is required that each director elected must first have been nominated, that is, named to the stockholders, before the balloting, as a candidate for the office; he must have been voted for upon a ballot, that is, his name must be written or printed upon a paper ballot cast into the ballot-box or receptacle by the stockholder desiring to vote for him; and then, to be elected, he must be one of the nine candidates whose names are written or printed upon the largest number of ballots cast. This is the plain and obvious construction of this by-law, as its language would be understood by the business men of this community, and undoubtedly expresses the intention of the business men, members of this corporation, who adopted this by-law for their own government in conducting the election of directors. Whatever may be the primary meaning of the word ballot, it can not be seriously urged that the stockholders of the Narragansett Brewing Company ever contemplated voting for their directors by

little balls, or that a stockholder conceived, when he wrote the name of the person for whom he wished to vote upon a piece of paper and put that paper into the ballot-box, that he had both nominated and balloted for a director. I do not think that "where the name is written or printed on the ballot it might well be called a nomination and ballot because it is itself evidence of both."

At said annual meeting of the corporation nine persons only were nominated for directors, viz.: C. A. Moeller, A. A. Sack, C. R. Moeller, R. L. Kautz, G. Wilhelm, and these four petitioners; after the balloting the tellers, who counted the votes, reported that the nine persons having the largest number of votes were C. A. Moeller, A. A. Sack, C. R. Moeller, R. L. Kautz, and G. Wilhelm, who had been nominated as aforesaid, and these four respondents who had not been nominated. The petitioners at once protested against the election, and the declaration thereof, of the four respondents; but they were declared elected, and each one has assumed the office of director. It is suggested in the opinion of the majority of the court that the complainants contend that the votes cast for the respondents were void because said respondents had not been orally nominated as candidates. I do not understand that such distinction is made. In the absence of other provision in the by-laws, the nominations would naturally be made to the stockholders, orally, at the meeting, before the balloting, But the contention of the petitioners is that the respondents were not nominated orally or in any other manner, which the record of the meeting shows to be the fact.

It is claimed by the petitioners that the proceedings at the annual meeting show a plan upon the part of certain stockholders to trick their colleagues and effect a change in the directorate without giving any intimation of the proposed change, and to prevent a free discussion of what was for the best interests of the corporation. The provision requiring the nomination of a director before his election is a provision much more important to the well-being of the corporation than the provision for a ballot. As in this case, if the respondents had been

nominated, perhaps many things might have been brought to the attention of the stockholders which would have demonstrated the undesirability of the election of the respondents as directors of the corporation, and would have prevented their selection. There are a number of circumstances attending this matter which give support to the contention of the petitioners. The nine persons nominated at the annual meeting were all nominated by one stockholder. After these nominations, one of the stockholders inquired, "Are these the only nominations?" and he was answered, "Yes." And the stockholder then asked, "Well, these are the same as last year?" and was answered, "Yes." After the report of the tellers it was the stockholder who had made the nominations who moved that the report of the tellers be preserved. And thereafter throughout the remainder of the meeting this same stockholder managed the interests of the respondents upon the floor. And in these proceedings before the court it is the same stockholder who appears as solicitor for the respondents. The suspicion is warranted that the nomination of these petitioners by the representative of the respondents was to forestall the nomination of the petitioners by their own friends and was part of a plan to conceal the real intention and to elect the respondents without giving an opportunity for discussion upon their nomination.

In the majority opinion considerable weight is given to certain language printed upon the blank form of ballot used at the election. The words "The blank lines are for any other name you may care to vote for" are said to be a contemporaneous construction of the by-law in that respect by the person who framed the ballot; and as it was used, and thus approved, by the stockholders, it may be said to have become theirs by adoption. In my opinion, the conclusion is not warranted. This form of ballot is not provided for in the by-laws. By whom it was distributed at the annual meeting is not disclosed. For anything that appears, it may have been prepared by the friends of the respondents as a part of the plan of concealing their intention, and the very language to which

so great weight has been given may have been inserted craftily
by the respondents or their friends as a point upon which to
hang the very argument which has been adopted by the court.
But the great force which has been given to the language,
quoted above, is not justified. That language can not fairly
be said to be a construction that a person could be voted for,
who had not been nominated in accordance with the by-law, nor
can it be said that the use of a ballot with that language upon
it constituted a waiver of the provisions of the by-law on the
part of the stockholders using it. To constitute a waiver there
must be an intentional relinquishment of a right. In this
case there must appear conduct from which it fairly can be
inferred that there was an intentional relinquishment of the
right of every stockholder, under the by-law, to have the
candidates for directors named to him before the balloting,
that he may have the benefit of the advice of his fellows in
casting his ballot, and no less that he may have the opportunity
to inform his fellows of any fact in his possession bearing upon
the desirability of the proposed directors. Any person, as,
for instance, the clerk of the corporation, preparing this form
of ballot, in perfect good faith, might well have inserted these
words without any intention of disregarding the provisions of
the by-law. The names printed upon the ballot are those of the
directors of the previous year, and the person preparing the
form of ballot might know that those men were to be nominated
at the meeting. Not knowing what other names would be pre-
sented, or that any others would be nominated, he could not
print other names upon the ballot before the meeting; and as the
ballot could not be printed at the meeting, after the nomina-
tion, he left a number of blank spaces to provide an oppor-
tunity for the stockholders to write in the names of candidates,
nominated at the meeting, for whom stockholders might wish
to vote. The direction, "The blank lines are for any other
name you may care to vote for," is a perfectly reasonable and
proper one to place upon the ballot and is not repugnant to
the superior direction of the by-law. Whether this language
was printed upon the ballot in this natural and proper way

35

or was subtly placed there, the use of the ballot with this language upon it does not in itself amount to a waiver of the provision of the by-law.

The opinion of the majority of the court concludes that "The largest number of votes have elected the directors. The spirit and, we believe, the letter of the by-law have been complied with. The will of the majority has been definitely ascertained, and the petitioners have no just ground of complaint." It is both the spirit and the letter of the by-law that no one is eligible for election as director of this corporation who has not been nominated, and these respondents were not nominated. It can not rightly be said, as does the majority opinion, that "The election of directors in the present case was by nomination and ballot." It violates the clear intent of the by-law to say that the election of these respondents was by nomination and ballot because certain other men were nominated. As to five directors, the election was by nomination and ballot; to so hold as to these respondents is to entirely disregard the undisputed facts.

It is the approval of a dangerous doctrine, to say that in the conduct of a corporation a majority of the stockholders can be allowed to disregard and override a restriction of the corporation by-laws. It is a doctrine which will lead to consequences of great injustice. A by-law, which it is within the power of the corporation to make, is as binding upon the corporation and upon all the stockholders as is the law of the land. Its purpose and effect frequently is to restrain the will of the majority. The by-law under consideration provides a restraint and a form of procedure which controls the will of the majority of this corporation. The by-laws themselves provide a method for their amendment, and it is within the power of the majority, if they observe the orderly method there provided, to amend this by-law. But until it is amended the majority can not legally disregard its provision. In *Wetherly* v. *Medical & Surgical Society*, 76 Ala. 567, the court said: "Such societies or corporations may make their own constitutions and by-laws; and so long as they remain un-

changed each member is alike bound and shielded by them. The society, too, must observe its own constitution and laws, until it changes them in legal form. Of course, such constitution and by-laws, to be obligatory, must not contravene public law, or any principle of public policy. No provision of the constitution or by-laws of this society is objectionable on that score. If any of them are inconvenient, or embarrassing in administration, this furnishes no excuse for disobeying them. It may suggest the expediency of their alteration."

I am of the opinion that the prayer of the petition should be granted.

PARKHURST, J., concurs in dissent.

*Comstock and Canning, Jeremiah E. O'Connell*, for petitioners. *Arthur P. Sumner, Charles C. Mumford*, for respondents.