Commonwealth ex rel. Laughlin, Jr., et al. *v.* Green et al., Appellants.

Argued Nov. 27, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Frank B. Ingersoll,* with him *William H. Eckert* and *Smith, Buchanan & Ingersoll,* for appellants.

*Earl F. Reed,* with him *Charles M. Thorp, Jr., J. Roland Johnston* and *Thorp, Bostwick, Reed & Armstrong,* for appellees.

172

OPINION BY MR. JUSTICE HORACE STERN, January 2, 1945:

Two rival groups of stockholders maneuvered for places on their company's board of directors. It would seem that the ultimate object of the majority faction was to eliminate the others from representation, while, on the other hand, the minority sought to increase its strength on the board. By the strategic device of secretly cumulating their votes on a person whom they had not placed in nomination the minority succeeded, on the face of the returns, in electing their candidate,—a result challenged by the majority on the ground that, under the by-laws of the corporation, nomination was a prerequisite to election. This raises the principal question on appeal.

The National Supply Company, a Pennsylvania corporation, had been governed by a board of directors of twelve persons elected annually for a term of one year, but at a meeting of the board on February 23, 1944, the by-laws were amended to read as follows:—"The business and affairs of the corporation are to be managed and controlled by a Board of twelve Directors, divided into three classes of four Directors each. Directors shall be elected at the annual meeting of stockholders. At the annual meeting of stockholders in the year 1944, the four nominees receiving the four highest number of votes shall be elected Directors of the third class for a term of three years, the four nominees receiving the next four highest number of votes shall be elected Directors of the second class for a term of two years and the four nominees receiving the next four highest number of votes shall be elected Directors of the first class for a term of one year, and until in each case their successors are elected and have qualified. At each annual meeting thereafter four Directors shall be elected for the term of three years, and until their successors are elected and have qualified, to succeed those of the class whose terms then expire."

The minority group feared that under this new arrangement they would ultimately lose their representation on the board because, four directors being chosen each year instead of twelve, their power to concentrate their strength by cumulative voting would be lessened by two-thirds and would no longer be sufficient to elect a candidate of their own choosing. Accordingly, they sought proxies for the annual meeting of the stockholders, their announced purpose being to seek a repeal there of this by-law. In their solicitations they stated that their object was to re-elect three directors who then represented their interests on the board, that they would vote the proxies received by them cumulatively for those three, and that they were not attempting to oust the present management or to unseat any of the present directors. The majority solicited proxies to be voted for the re-election of the twelve persons then members of the board.

When the meeting convened the twelve incumbents were formally placed in nomination for re-election, and a motion was made and carried, without dissent, to close the nominations. Pittsburgh Steel Company, one of the minority group, and the holder of 120,000 shares, had given its proxy to J. H. Hillman, Jr., and he, in turn, had appointed John E. Laughlin, Jr., Esq., as his substitute. Laughlin, partially cumulating his vote, cast a ballot for 1,200,000 votes for himself as director, although he had not been nominated. This resulted in his being seventh on the list of successful candidates, thereby demoting one of the incumbents, Edward H. Green, Esq., to the first class for a term of one year and completely eliminating another, D. S. Faulkner, who was fourteenth on the list. The minority group succeeded also in placing one T. W. Kirkpatrick as thirteenth highest, but, since it is obvious that if Laughlin was properly elected Kirkpatrick was thereby eliminated,[1] his right is not

---

[1] If Laughlin was *not* properly elected Kirkpatrick must likewise be rejected because he too had not been placed in nomination.

being pressed, and the only question at issue is between Laughlin on the one hand and Green (because of his demotion) and Faulkner (because of his elimination) on the other. When the result was announced the votes cast for Laughlin and Kirkpatrick were challenged on the ground that they had not been placed in nomination; the judges of election sustained the challenge and declared that Green was elected to the second class, Faulkner to the first class, and Laughlin and Kirkpatrick were not elected. Thereupon Laughlin and Kirkpatrick brought the present quo warranto proceedings to oust Green from the second class and Faulkner altogether. The respondents filed an answer to which the relators demurred. The court sustained the demurrer. Green and Faulkner appeal.

Ordinarily, of course, a person can be elected to office through "write-ins" of his name on the ballot; it is not necessary that he should have been placed in nomination. But appellants rely on the provision of the by-law that "the four *nominees* receiving the four highest number of votes shall be elected Directors of the third class . . . the four *nominees* receiving the next four highest number of votes shall be elected Directors of the second class . . . and the four *nominees* receiving the next four highest number of votes shall be elected Directors of the first class. . . ." Because of this they insist that only *nominees* could be elected directors and that "write-in" votes were barred. Appellees contend, on the other hand, that if it had been intended to make formal nomination a qualification for election the by-law would have so stated in unambiguous language and not left it to implication from the use of the word "nominees". This position finds a measure of support in *Commonwealth, ex rel. Grabert v. Markey*, 325 Pa. 433, 190 A. 892, where a by-law of a building and loan association provided that all nominations for the office of director should be made in the month next preceding the annual meeting of shareholders; it was held that this did not prevent the share-

holders at the annual meeting from voting for and electing persons who had not been nominated at all, the court saying (p. 435, A. p. 893) : "If it was intended that only those nominated as it provides should be eligible for election, it would have been easy to say so. We are loath to limit the fundamental right of shareholders to vote for whomsoever they please as directors of their enterprise, unless the limitation of their right is plainer than here appears." (See also *Wirth v. Fehlberg,* 30 R. I. 536, 76 A. 438). It is gravely to be doubted whether the word "nominees" was intended to be used in the technical sense of persons formally nominated for office; it is of interest to note that even the majority group, in the proxy statement which they sent out a month before the annual meeting and therefore before any nominations were actually made, referred to the twelve persons in whose interests they were seeking the proxies as "nominees". Be this as it may, appellants' contention must be rejected for another and more controlling reason, namely, that a corporation may not adopt a by-law which is in conflict with the Constitution or laws of the State: *Commonwealth v. Detwiller,* 131 Pa. 614, 634, 18 A. 990, 991, 992; *Lutz v. Webster,* 249 Pa. 226, 94 A. 834. The Constitution provides, Article 16, section 4, that "In all elections for directors or managers of a corporation each member or shareholder may cast the whole number of his votes for one *candidate,* or distribute them upon two or more *candidates,* as he may prefer." The Business Corporation Law of 1933, P. L. 364, after providing in section 302(11), that every business corporation shall have power "to make, alter, amend, and repeal by-laws, not inconsistent with its articles *or with law,* for the administration and regulation of the affairs of the corporation," [2] and after confirming, in section 505, the right of shareholders to cumulate their votes in elections for directors, further provides that "The *candidates* receiving the highest number of votes up to the number of direc-

---

[2] A similar provision is contained in section 304.

tors to be elected shall be elected." Even if, therefore, the by-law here in question were to be interpreted as meaning that votes could be cast only for "nominees" and that only such candidates as had been formally placed in nomination could, if they received the highest number of votes, be elected directors, it would be an inconsistent and therefore invalid limitation of the provision of the Constitution and the statutory law. The term "candidates" embraces a decidedly broader class than the term "nominees" literally construed. In *Leonard v. Commonwealth*, 112 Pa. 607, 624, 4 A. 220, 224, the court said that the word "candidate", as used in the Constitution, was to be understood in its ordinary popular meaning, and then proceeded: "Webster defines the word to mean: 'One who seeks or aspires to some office or privilege, or who offers himself for the same'. This is the popular meaning of the word 'candidate'; . . . We therefore say, in every day life, that a man is a candidate for an office when he is seeking such office. It is begging the question to say that he is only a candidate after nomination, for many persons have been elected to office who were never nominated at all." In Webster's New International Dictionary "candidate" is defined as "one who offers himself, or is put forward by others, as a suitable person or an aspirant or contestant for an office, privilege, or honor." In Murray's New English Dictionary it is defined as "one who seeks or aspires to be elected or appointed to an office, privilege, or position of honour, or who is put forward or selected by others as an aspirant." In *Adams v. Lansdon*, 18 Idaho 483, 504, 110 P. 280, 287, it was said: "It is clear to us that a man is a candidate for an office at the time he begins to seek such office or lay his plans to procure the nomination for such office." (See also *State v. Bates*, 102 Minn. 104, 107, 112 N. W. 1026, 1027). Laughlin, when elected, even though not a "nominee", was a "candidate", for, if not previously, he had at least become one when he voted for himself, by which act he at the same time established him-

self as a candidate and consented to being one. There-
fore, because of the right given to shareholders by the
Constitution to cumulate their votes for the *candidates*,
and because of the provision of the Business Corporation
Law previously cited, Laughlin was entitled to a direc-
torship as being one of "the *candidates* receiving the
highest number of votes up to the number of directors to
be elected". Nor can the majority stockholders complain
that he did not inform them of his intention to cumulate
his votes upon his own candidacy, since, in this maneu-
ver, he exercised a constitutional and statutory right:
*Pierce v. Commonwealth,* 104 Pa. 150, 155, 156.

Appellants urge, as a secondary proposition, that the
members of the minority group, J. H. Hillman, Jr.,
Pennsylvania Industries, Inc., Pittsburgh Steel Com-
pany, P. J. Shouvlin and R. J. Shouvlin, were guilty of
fraud in soliciting proxies in that they stated that they
were not attempting to unseat any of the directors and
that all the proxies they obtained would be voted cumu-
latively for the three minority representatives. As a
matter of fact, however, all the proxies secured from
other stockholders were actually so voted, with the ex-
ception of those obtained from two stockholders who had
given explicit directions to vote their stock for Kirk-
patrick, and that mandate was properly observed. Ap-
pellants allege that Pittsburgh Steel Company was se-
cretly involved in the solicitation of proxies and therefore
must share responsibility for misstatements made regard-
ing the intentions of the minority group; consequently,
appellants say, Pittsburgh Steel Company should not
have been allowed to vote its own stock. This is an
untenable conclusion supported neither by reason nor
authority. If proxies were obtained by fraudulent meth-
ods they might be held to be null and void, at least on
the complaint of stockholders who gave them in reliance
on the statements made in the course of solicitation. But
this would not affect the right of those who obtained the
proxies to vote their own stock as they pleased; at least

178

it is certain that such right could not be challenged by stockholders who did not execute any such proxies and were therefore not misled, in a legal sense, by the methods used in obtaining them.

Order affirmed.