## Richards v. The Mahoning Valley Country Club

*William E. McDonald,* for plaintiffs.
*Daniel F. Zeigler,* for defendants.

SALMON, *S.J., specially presiding,* November 6, 1989 — This action as above captioned is commenced by the filing of a petition which seeks to enjoin William Lilley from taking office as president of defendant non-profit corporation, hereinafter referred to as the club, and for other relief. An answer has been filed which shows the parties are in agreement as to most of the salient facts. In addition, counsel met with the court on September 14, 1989, and placed of record a stipulation which confirms their agreement as to most of the important facts. The crucial fact not stipulated, because not known with certainty in the absence of the club's records, was the date when William Lilley became a member of the club.

Following the entry of that stipulation, this court entered a preliminary decree enjoining William Lilley from becoming president pending a hearing on October 23, 1989 and the further order of the court. Hearing was had on that date and the facts as to Mr. Lilley's membership were established.

In accordance with Pa.R.J.A. 2156, this matter is heard in the Orphans' Court.

The Mahoning Valley Country Club was organized under the Act of April 29, 1874, P.L. 73, as appears by an order of the Court of Common Pleas of Carbon County filed October 30, 1926, at No. 10 January term 1927, by Laird H. Barber, President Judge. Said Act of 1874 in section 1 authorized every corporation formed thereunder "to make by-laws not inconsistent with law, for the management of its property, the regulation of its affairs and the transfer of its stock." As to non-profit corporations, the Act of 1874 was succeeded by the Non-Profit Corporation Law of 1933, P.L. 289. There have been various amendments and re-enactments since the Act of 1933 but in each instance the power to

make bylaws has been retained in substantially the same language. At the time of the events here involved, the governing statute was the Act of 1972, P.L. 1063, section 7504, 15 Pa.C.S. §7504. There is no dispute as to the power of the membership of this corporation to adopt, amend and repeal bylaws.

The most recent re-enactment of the non-profit corporation statute is the Act of 1988, P.L. 1444, known as the Corporation Not for Profit Code, effective October 1, 1989. We find nothing in the new code which might affect the outcome of our present problem. It was not yet in effect when the events here in issue took place and there are no provisions which would change our result even if it were effective.

While defendants do not question the power of the membership to control the bylaws, they do contend that, under Article XI and particularly under the last clause of section 2 which states "and the interpretation of these bylaws shall rest with the board of governors," the board of governors had authority to rule that William Lilley was eligible to be elected. We do not agree.

At the conclusion of said hearing on October 23, including summations by counsel, we granted defense counsel's request for leave to file a legal memorandum in support of his client's position by October 27. We have not been favored with any such memorandum.

We think that, in the present posture of this case, with no dispute as to facts, and no ambiguity in the plain language of Article IV, section 3, of the bylaws hereinafter set forth, there is no need for "interpretation." According to Black's Law Dictionary, the definition of the word "interpretation" is: "A translation. The art of finding the true sense of any form of words or symbols."

And Webster's Seventh New Collegiate Dictionary defines that word as: "To explain the meaning of."

The words of the bylaw are so clear that "he who runs may read" and no interpretation is needed to apply it to our present problem. If the language were unclear or ambiguous, we agree that the interpretation would be for the board of governors. What the board has undertaken to do here is not to "interpret" but to suspend or repeal the bylaw. This is a power which the membership has not surrendered to the board of governors under these bylaws.

The members who objected from the floor to the nomination of Mr. Lilley were acting properly, were clearly in order, and should have been heard and should have prevailed. The election of William Lilley cannot be permitted to stand in the face of the bylaws.

Decided cases in this area of the law are few, probably because such issues, especially in nonprofit corporations, are nearly always resolved within the structure of the organization, as they should be. In fact, when we had our in camera conference with counsel on September 13 and 14, we pointed out the devastating effect such litigation can have in an organization, especially a social one, and urged that a compromise be reached. Obviously, our view did not prevail.

Perhaps the closest case to the issue here is *Commonwealth ex rel. Grabert v. Markey,* 325 Pa. 433, 190 Atl. 892 (1937). The bylaw in issue there governed nomination rather than election. Shareholders voted for and elected two directors who had not been nominated in accordance with the bylaw, in fact had not been nominated at all. The Supreme Court held that the bylaw governed only nomination and not election, saying: "If it was intended that

only those nominated as it provides should be eligible for election, it would have been easy to say so."

In our present case, the bylaw deals clearly with qualification for *election*. We think our holding is in accord with the Supreme Court's decision.

We have also considered *Commonwealth ex rel. Laughlin v. Green,* 351 Pa. 170, 40 A.2d 492 (1945), which cites the *Grabert* case with approval. There the bylaw again dealt with nomination, and a certain shareholder cumulated a large number of votes and cast them for himself although he was not nominated. The Supreme Court upheld his election holding that the bylaws did not explicitly say that only those nominated are eligible for election.

Again, we point out that the bylaw in our case *explicitly* provides that only those who have been members for three consecutive years, etc., may be elected to the board. We think our holding is in accord with this Supreme Court decision also.

From the testimony, from the stipulation of counsel and from the court records of Carbon County, we make the following

### FINDINGS OF FACT

(1) Mahoning Valley Country Club was incorporated as a non-profit corporation by an order of the President Judge of Carbon County entered October 30, 1926, at No. 10 January term 1927.

(2) The bylaws of the club were introduced in evidence without objection as plaintiffs' exhibit 1 and were effective at all times here involved.

(3) Provisions of the bylaws which we find relevant to disposition of this case are:

## *"Article III"*

"Section 1. The officers of the club shall be a president, vice-president, secretary, treasurer and six directors, all of whom shall constitute the board of governors. The immediate past president shall be a member of the board for one year following his presidency.

## *"Article IV"*

"Section 1. The president, vice-president, secretary and treasurer shall be elected at each annual election meeting and shall serve one year or until their successors are chosen. These officers shall be eligible for re-election. Their term of office shall begin with the fiscal year of the club.

"Section 2. Two directors shall be elected at each annual meeting to serve for three years or until their successors are chosen. No director fulfilling a three-year term shall be eligible to succeed himself.

"Section 3. No member shall be elected to the board of governors unless he has been a member in good standing not less than three consecutive years and shall have served on at least one of the standing committees of the club.

## *"Article VIII"*

"Section 8. Application for membership must be signed by the applicant on a form prescribed by the club, countersigned by two recommending members and be presented to the secretary, who shall deliver same to the membership committee and the board of governors. The dissenting vote of three of the board of governors shall be sufficient to reject the applicant. The rejected candidate shall not, within six months after rejection, be again proposed for membership. A

second rejection shall be final. Candidates for membership in the club, who have been elected by the board of governors shall qualify as members by the payment of the entrance fees upon notice of their election. If membership is not accepted within 30 days, an election may be declared void.

## "Article X"

"Section 1. The annual election meeting shall be held at the clubhouse on the fourth Wednesday of August at a time to be decided by the board of governors. Election of officers and directors shall be the principal purpose of this meeting.

"Section 2. The fiscal year shall be from October 1 to September 30.

## "Article XI"

"Section 1. These bylaws may be amended by a majority vote of the members present at the annual or any special meeting of the club, provided that notice of the meeting and of the proposed amendment, or amendments, shall be posted on the bulletin board two weeks before the meeting and a copy of said amendment or amendments shall be mailed to each resident member at least two weeks before the meeting. Should discussion of the proposed amendment result in a general consensus to reword the amendment while retaining its general characteristics, such amendments may be made at the time of the meeting.

## "Article XI"

"Section 2. The board of governors shall from time to time have power to make rules and regulations on

matters not herein mentioned and the interpretations of these bylaws shall rest with the board of governors."

(4) On August 23, 1989, the fourth Wednesday of the month, an election meeting was held as provided in the bylaws, Article X, section 1, as above quoted.

(5) At the election meeting, Daniel Zeigler, Esq., now counsel for the defendants herein, presided.

(6) There were two candidates for the office of president, Richard Clune and William Lilley.

(7) There was objection from the floor to the eligibility of William Lilley for the office of president and member of the board of governors on the ground he had not been a member for three years and was not eligible to the office under the bylaws.

(8) The chairman, Mr. Zeigler, ruled the objectors out of order and stated before this court that he did so because the board of governors had ruled Mr. Lilley eligible.

(9) The voting resulted in one more vote for William Lilley than for Richard Clune.

(10) Under the bylaws, the officers elected August 23 were to take office on October 1, 1989, as per Article X, section 2, and Article IV, section 1.

(11) On September 11, 1989, this action was filed.

(12) William Lilley filed his application for membership in the club in September 1986 and it was acted upon favorably by the board of governors on October 8, 1986, and the said applicant was notified of his acceptance on October 22, 1986.

(13) William Lilley was sent a bill for entrance fee and dues for the period commencing November 1, 1986.

(14) Under Article VIII, section 8 of the bylaws, a newly elected member qualifies as a member when he or she pays the entrance fee upon notice of election to membership.

(15) The earliest date at which William Lilley could have qualified as a member would have been November 1, 1986.

(16) William Lilley could not have qualified under the bylaws to be a member for three years and thus eligible to be elected president and a member of the board of governors until November 1, 1989, and was therefore not eligible when he was elected on August 23, 1989.

(17) Richard Clune was the only eligible candidate involved in the voting, received just one vote less than Mr. Lilley, and is therefore the duly elected president and member of the board of governors.

We reach the following

## CONCLUSIONS OF LAW

(1) Plaintiffs' exhibit 1, the printed bylaws in effect as of May 27, 1989, constituted the bylaws of Mahoning Valley Country Club at all times here involved.

(2) Article IV, section 3, establishing the prerequisite of three years' membership in good standing for membership in the board of governors, is reasonable and valid.

(3) William Lilley was not qualified or eligible under the bylaws to be elected president and to the board of governors at the election held August 23, 1989.

(4) The election of William Lilley as president and to membership on the board of governors was illegal and void.

(5) Richard Clune, the sole other candidate for president and for membership on the board of governors, and who received one vote less than William Lilley, is the successful candidate for said positions and is entitled to assume those positions

for the term commencing October 1, 1989 and until his successor is elected and installed.

(6) Article IV, section 3 required no "interpretation" in the circumstances existing at the election meeting, and the board of governors exceeded its authority in ruling, as expressed by the chairman of the meeting, that William Lilley was eligible for election to said offices.

(7) Richard Clune shall be promptly installed as president and member of the board of governors of said club.

An appropriate decree nisi shall be entered.

## DECREE NISI

And now, November 6, 1989, it is ordered and decreed that the election of William Lilley on August 23, 1989, to the offices of president and member of the board of governors was illegal and void; and that Richard Clune was duly elected to said offices and shall be promptly installed therein.

Ten days after the filing hereof in the office of the prothonotary and clerk of Orphans' Court, this decree nisi shall be entered as the final decree unless further proceedings have been timely taken under Pa.R.C.P. 227.1.