Sol A. DANN, John H. Neville and Louise A. Turek, Plaintiffs-Appellants,

v.

STUDEBAKER–PACKARD CORPORATION, Harold E. Churchill, Hugh J. Ferry, and A. J. Porta, Defendants-Appellees.

No. 13940.

United States Court of Appeals Sixth Circuit.

Feb. 6, 1961.

Sol A. Dann, Dann, Rosenbaum & Bloom, Detroit, Mich., for appellants.

Thomas G. Meeker, General Counsel, Walter P. North, Associate General Counsel, David Ferber, Asst. General Counsel, Theodore Zimmerman, Attorney, Securities and Exchange Commission, Washington, D. C., on brief, amicus curiæ for Securities and Exchange Commission.

Ralph L. McAfee, New York City, Louis F. Dahling, Richard D. Rohr, Bodman, Longley, Bogle, Armstrong & Dahling, Detroit, Mich., and Arnold I. Roth, Cravath, Swaine & Moore, New York City, on brief, for appellees.

Before MILLER and O'SULLIVAN, Circuit Judges,* BOYD, District Judge.

BOYD, District Judge.

Appellants, suing on behalf of themselves as well as "on behalf of each and every other shareholder of Studebaker-Packard Corporation similarly situated," appeal from a judgment dismissing their amended complaint without any comment by the District Judge.

The present appeal brings this case for a second time before this court, appellants previously having appealed unsuccessfully from an order of the District Court dismissing their original complaint and denying leave to amend. On February 20, 1958, this court dismissed that first appeal on the ground that the order appealed from was not a final order. Dann v. Studebaker-Packard Corp., 6 Cir., 1958, 253 F.2d 28. Subsequently, the District Court permitted these appellants to file the present amended complaint. Upon motion by the appellees, this complaint also was dismissed, and the appellants now prosecute the present appeal.

In substance, the amended complaint here under consideration charges "a fraud upon the stockholders" of the appellee, Studebaker-Packard Corporation. Such fraud allegedly was occasioned by certain "arrangements" between Studebaker-Packard and the Curtiss-Wright Corporation, the effect of which con-stituted a "waste and dissipation" of Studebaker-Packard assets. These "arrangements" were alleged to be the result of false and misleading proxy solicitation by the appellees, in violation of the Securities Exchange Act of 1934, as well as the result of an inaccurate count of the votes cast at a special stockholders' meeting in 1956 at which said "arrangements" were approved. There is also a claim that Studebaker-Packard and Curtiss-Wright conspired with the Utica-Bend Corporation to violate the Exchange Act and thereby to defraud Studebaker-Packard and its stockholders. Diversity of citizenship is neither alleged nor claimed. Jurisdiction to entertain and determine the action is said to exist by virtue of the Securities Exchange Act of 1934, § 14 et seq., 48 Stat. 895 (1934), 15 U.S.C.A. §§ 78n et seq., or more specifically, Title 15 U.S.C.A. § 78aa.[1] Jurisdiction also is asserted under the more general provisions of 28 U.S.C. § 1331 (1948),[2] this allegedly being the action "arising under the laws of the United States."

It further appears from the face of the amended complaint that these appellants own "in excess of fifteen hundred" shares in the defendant corporation, and that there are "in excess of 100,000 shareholders of the same class" as appellants. The relief sought, in effect, is that the Court declare void any proxies improperly solicited pursuant to the Securities Exchange Act of 1934, § 14(a),

---

* On the day of the oral argument of this case in this court, Judge O'Sullivan was a District Judge sitting by designation. He was sworn in as Circuit Judge on April 4, 1960.

1. "§ 78aa. Jurisdiction of offenses and suits. The district courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

2. "§ 1331. Federal question; amount in controversy.
"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest or costs, and arises under the * * * laws * * * of the United States."

3. "§ 78n. Proxies.
"(a) It shall be unlawful for any person, by the use of the mails or by any means * * * of interstate commerce * * * to solicit * * * any proxy * * * in respect of any security * * * registered on any national securities exchange in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

48 Stat. 895 (1934), 15 U.S.C.A. § 78n (a) 1958,[3] or the regulations thereunder,[4] and, further, that the Court recount all the votes and proxies submitted at the Studebaker-Packard stockholders' meeting of October 31, 1956. If, discounting invalid proxies, the recount should show that the "arrangements" with Curtiss-Wright were not approved by two-thirds of the outstanding stock as allegedly required by the corporation law of Michigan, the appellants demand that the Court return Studebaker-Packard to its pre-1956 economic position which obtained before said "arrangements" with Curtiss-Wright were consummated.

The appellees attacked this complaint below by motion to dismiss predicated upon the following grounds:

1. The District Court lacked jurisdiction of the subject matter of the instant controversy, and/or

2. The amended complaint failed to state a claim upon which relief could be granted, and/or

3. The amended complaint failed to comply with the mandatory requirements of Fed.R.Civ.P. 23(a) and (b), 28 U.S.C.A., and/or

4. The plaintiffs below failed to join indispensible parties to this lawsuit.

 The District Judge granted the motion to dismiss without so much as a hint as to his reason for doing so. As a result, we are now considerably handicapped by not knowing which of the above grounds he relied upon. The first question for us to determine, therefore, is whether or not we are warranted in proceeding to review the decision below without first remanding it for further proceedings at the trial level. The rule has long been settled that where a decision of a lower court is correct, it must be affirmed on appeal even though the lower tribunal gave a wrong reason for its action.[5] We have, ourselves, on numerous occasions, announced this rule for the Sixth Circuit.[6] A more difficult problem is presented, however, in deciding how far to extend this general rule to the case where, as here, the lower court has assigned no reasons whatever for its decision. Of course, it is axiomatic that an appellate court is not designed to perform the functions of a trial court having original jurisdiction and it must, of necessity, limit its consideration of the questions involved to the record on appeal. However, in the interests of judicial economy, the federal courts generally have held that where a full understanding of the issues presented may be garnered from the record on appeal, without knowledge of the specific grounds upon which the trial court acted, then the appellate court would consider

3. See note 3 on page 204.

4. SEC Reg. X–14A–9, 17 C.F.R. 240.14a–9 (Supp.1952) (following SE Act of 1934 § 14(a), provides:
 "False or misleading statements. No solicitation * * * shall be made by means of any proxy statement * * * containing any statement which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading. * * * "

5. E. g., Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 1951, 341 U.S. 246, 249–250, 71 S.Ct. 692, 95 L.Ed. 912; J. E. Riley Investment Co. v. Com'r of Internal Revenue, 1940, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36; Helvering v. Gowran, 1937, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224; accord, e. g., Jaffke v. Dunham, 1956, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314; LeTulle v. Scofield, 1940, 308 U.S. 415, 421, 60 S.Ct. 313, 84 L.Ed. 355.

6. United Steelworkers of America v. American Mfg. Co., 6 Cir., 264 F.2d 624, 626, certiorari granted 1959, 361 U.S. 881, 80 S.Ct. 152, 4 L.Ed.2d 118; Sherman v. Air Reduction Sales Co., 6 Cir., 1958, 251 F.2d 543, 546; Cold Metal Process Co. v. McLouth Steel Corp., 6 Cir., 1942, 126 F.2d 185, 189; Paine & Williams Co. v. Baldwin Rubber Co., 6 Cir., 1940, 113 F.2d 840, 844; American Eagle Fire Ins. Co. v. Gayle, 6 Cir., 108 F.2d 116, 117, certiorari denied 1939, 309 U.S. 686, 60 S.Ct. 809, 84 L.Ed. 1029; Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 49 F.2d 28, 29, certiorari denied 1931, 284 U.S. 662, 52 S.Ct. 37, 76 L.Ed. 561.

and pass on those issues.[7] We frequently have followed this procedure ourselves in proper cases.[8] In the case before us, the issues for our consideration all come up on a motion attacking the form of the pleadings. Therefore, the only material necessary for the proper disposition of such a motion are the pleadings themselves, which, of course, are a part of this record. Although it would be helpful, it is by no means necessary that we have the benefit of the trial court's thinking on these matters. Accordingly, we will proceed to a full consideration of the questions here presented.

■■ Turning, then, to the "merits" of the motion to dismiss, we first must deal with the question of subject matter jurisdiction. Broadly speaking, the amended complaint charges that these appellees have "violated" Section 14(a) of the Exchange Act, and the regulations thereunder, and that the appellants have suffered injury as a result of such violation. In view of this, it is clear that Section 27 of the Act,[9] in giving the federal courts "exclusive jurisdiction of violations of this title or the rules and regulations thereunder," established federal jurisdiction, quite apart from diversity of citizenship, at least to consider the allegations of this complaint. But it should be noted at this juncture that jurisdiction to consider the allegations of the complaint does not necessarily mean that such allegations, if established, will state a claim for the relief demanded under federal law, or, indeed, for any relief at all. In Bell v. Hood, 1946, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939, the United States Supreme Court held:

> "Jurisdiction, therefore, is not defeated * * * by the possibility that the averments might fail to state a cause of action on which the petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and * * * must be decided after * * * the Court has assumed jurisdiction over the controversy."

To say federal courts have jurisdiction of the subject matter herein, therefore, means merely that they may *consider* the merits of any federal question involved. Therefore, a dismissal at this stage of the proceedings on the broad ground of lack of jurisdiction of the controversy would be improper.

We move now to the much more difficult task of determining what relief, if any, can be granted for violation of the federally protected rights alleged in this

7. E. g., Graham v. United States, 9 Cir., 1957, 243 F.2d 919, 923; McLeod v. Cities Service Gas Co., 10 Cir., 1956, 233 F.2d 242, 246; Walmac Co. v. Isaacs, 1 Cir., 1955, 220 F.2d 108, 114; Burman v. Lenkin Const. Co., 1945, 80 U.S.App.D.C. 125, 149 F.2d 827, 828; Sbicca-Del Mac, Inc. v. Milius Shoe Co., 8 Cir., 1944, 145 F.2d 389, 400; Knapp v. Imperial Oil & Gas Products Co., 4 Cir., 1942, 130 F.2d 1, 3–4; Girard Trust Co. v. Amsterdam, 5 Cir., 1942, 128 F.2d 376, 377; accord, Pennsylvania R. Co. v. Wabash, St. L. & Pac. Ry. Co., 1895, 157 U.S. 225, 228–229, 15 S.Ct. 576, 39 L.Ed. 682. But see, Von Der Heydt v. Rogers, 1958, 102 U.S. App.D.C. 114, 251 F.2d 17 (record held not sufficiently complete for review without benefit of opinion of trial court).

8. Urbain v. Knapp Bros. Mfg. Co., 6 Cir., 1954, 217 F.2d 810, 816–817, certiorari denied 1955, 349 U.S. 930, 75 S.Ct. 772, 99 L.Ed. 1260; Hazeltine Research, Inc. v. General Motors Corp., 6 Cir., 1948, 170 F.2d 6, 10, certiorari denied 1949, 336 U.S. 938, 69 S.Ct. 750, 93 L.Ed. 1097; accord, Dixie Sand & Gravel Corp. v. Holland, 6 Cir., 1958, 255 F.2d 304, 313–314 (McAllister, J., dissenting). But see Urbain v. Knapp Bros. Mfg. Co., supra, (Miller, J., dissenting) (record not sufficient to support appellate consideration); Metalock Repair Service, Inc. v. Harman, 6 Cir., 1958, 258 F.2d 809, 815–816 (record held insufficient for review without specific grounds upon which trial court acted).

9. 48 Stat. 902 (1934), 15 U.S.C.A. § 78aa, set out supra, note 1.

complaint. The first question which confronts us in this regard is whether or not Section 14(a) of the Exchange Act creates a right of action on the part of individual stockholders as well as on the part of the Securities and Exchange Commission. Because of the relative sparsity of decisions involving this precise point at the appellate level, it is helpful first to examine the background and general purposes of the Act itself, and particularly, of Section 14(a). The Securities Exchange Act of 1934 was the product of intensive investigation into the abuses of the securities markets and the need of investors' protection against the abuses of insiders.[10] After the staggering losses suffered by investors between 1929 and 1932, the feeling was paramount that basic changes in the securities markets and the relationship between directors and stockholders were necessary if our traditional economic institutions were to survive.[11] The Act provides generally for control of the exchanges,[12] for the regulation of credit employed in connection with securities transactions,[13] for the registration of brokers and dealers,[14] for the elimination of various fraudulent, manipulative, and deceptive practices,[15] for the filing of public reports,[16] and for the regulation of proxy soliciting practices.[17] In a preamble setting for the necessity for the policy of regulation and control embodied in the statute, Congress stated that its purpose was "to impose requirements necessary to make such regulation and control reasonably complete and effective."[18] The administration of the Act is vested in the Securities and Exchange Commission,[19] which is given broad rule-making and other authority.[20] The Act provides for criminal penalties for wilful violations;[21] it authorizes the Commission to seek injunctions;[22] and it authorizes certain express private remedies, such, for example, as damages for unlawful manipulation of security prices,[23] recovery of unlawful profits derived by improper use of "inside" information by corporate officers,[24] and for damages for reliance upon misleading statements which caused the party injured thereby either to buy or sell securities at prices affected by such statements.[25] It also makes contracts void which are entered into in violation of the Act or regulations promulgated thereunder.[26] With particular regard to Section 14(a), dealing with the solicitation of proxies, its purpose was stated succinctly in the Senate Report on the bill:

> "In order that the stockholder may have adequate knowledge as to the manner in which his interests are being served, it is essential that he be enlightened, not only as to the financial condition of the corporation, but also as to the major questions of policy which are to be decided at the stockholders' meeting. Too often proxies are solicited without explanation to the stockholder

---

10. Stock Exchange Practices, hearings before the Senate Committee on Banking and Currency on S.Res. 84, 72d Cong., S.Res. 56 and S.Res. 97, 73d Cong. (1932–1934).

11. See H.Rep. No. 1383, 73d Cong., 2d Sess. (1934), 2–5; S.Rep. 792, 73d Cong. 2d Sess. (1934), 3–5.

12. Sections 16 and 19, 15 U.S.C.A. §§ 78p and 78s.

13. Sections 7 and 8, 15 U.S.C.A. §§ 78g and 78h.

14. Sections 15(a) and (b), 15 U.S.C.A. § 78o(a) and (b).

15. Sections 9, 10 and 15(c), 15 U.S.C.A. §§ 78i, 78j and 78o(c).

16. See, e. g., Sections 12, 13, and 16(a), 15 U.S.C.A. §§ 78(l), 78m, and 78p(a).

17. Section 14, 15 U.S.C.A. § 78n.

18. Section 2, 15 U.S.C.A. § 78b.

19. Section 4, 15 U.S.C.A. § 78d.

20. This authority is embodied in numerous specific provisions and in a general grant of authority set forth in Section 23(a), 15 U.S.C.A. § 78w.

21. Section 32, 15 U.S.C.A. § 78ff.

22. Section 21(e), 15 U.S.C.A. § 78u(e).

23. Section 9(e), 15 U.S.C.A. § 78i(e).

24. Section 16(b), 15 U.S.C.A. § 78p(b).

25. Section 18, 15 U.S.C.A. § 78r.

26. Section 29, 15 U.S.C.A. § 78cc.

of the real nature of the questions for which authority to cast his vote is sought." [27]

Further explanation is found in the House Report:

"Fair corporate sufferage is an important right that should attach to every equity security bought on a public exchange. Managements of properties owned by the investing public should not be permitted to perpetuate themselves by misuse of corporate proxies. Insiders, having little or no substantial interest in the properties they manage often have retained their control without adequate explanation of the management policies they intend to pursue. * * * Inasmuch as only the exchanges make it possible for securities to be widely distributed among the investing public, it follows as a corollary that the use of the exchanges should involve a corresponding duty of according shareholders fair sufferage. For this reason, the proposed bill gives the * * * Commission power to control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses which have frustrated the free exercise of the voting rights of stockholders." [28]

It is clear, therefore, that the federal "right" sought to be protected by this section of the Act is the stockholders' right to full and fair disclosure in corporate elections by proxy.

██ Specifically, the first question for our determination is this: Does the fact that Section 14(a) does not, by express language, give a private investor the right to bring an action to enforce his right to full and fair disclosure, preclude the possibility of such a right of action being raised by implication? This question is somewhat complicated by virtue of the rule of statutory construction, *expressio unius est exclusio alterius*. As noted above, other sections of the Act do expressly give private parties the right to bring suit for enforcement of rights created thereby. Also, the power to enforce Section 14(a) is expressly vested in the Securities Exchange Commission. However, despite the contention of these appellees that their "research disclosed no case" in which the right of a stockholder "to assert an action for violations of the proxy provisions of the Securities Exchange Act * * * has been squarely upheld," a substantial number of District Courts, either expressly or by implication, have held that such a private right is created by Section 14(a). E. g., Mack v. Mishkin, D.C.S.D.N.Y.1959, 172 F.Supp. 885, 889; Mills v. Sarjem Corp., D.C.D.N.J.1955, 133 F.Supp. 753 (by implication); Weeks v. Alpert, D.C.D.Mass. 1955, 131 F.Supp. 608; see also, Loss, The SEC Proxy Rules in the Courts, 73 Harv.L.Rev. 1041, 1046, and cases cited, n. 15. These cases are consistent with numerous other decisions holding that private rights of action arise from other sections of the Act despite the absence of any express provisions therefor.[29] Specifically, the argument that the maxim *expressio unius est exclusio alterius* should preclude the existence of a private right of action under the Act, where such right was not provided for expressly, was rejected by the Baird case. We think this argument was rightly rejected in the light of the long established general rule that a breach of statutory duty normally gives rise to a right of action

---

27. S.Rep. No. 792, 73d Cong. 2d Sess. (1934), p. 12.

28. H.Rep. No. 1383, 73d Cong., 2d Sess. (1934), pp. 13–14. And see also, S. E. C. v. Transamerica Corp., 3 Cir., 1947, 163 F.2d 511, 518, certiorari denied 1948, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 418 (*held*, the underlying purpose of Exchange Act was, *inter alia*, to protect the stockholders right to fair corporate sufferage).

29. E. g., Fratt v. Robinson, 9 Cir., 1953, 203 F.2d 627, 631–633; Fischman v. Raytheon Mfg. Co., 2 Cir., 1951, 188 F. 2d 783, 787; Baird v. Franklin, 2 Cir., 141 F.2d 238, 244–245 (Clark, J., dissenting on other grounds), certiorari denied 1944, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591.

on behalf of the injured persons for whose benefit the statute was enacted. E. g., Bell v. Hood, supra; Texas & Pac. Ry. Co. v. Rigsby, 1916, 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874; Zajkowski v. American Steel & Wire Co., 6 Cir., 1918, 258 F. 9, 13; Restatement, Torts, § 286 (1934). Accordingly, in line with the underlying purpose of Section 14(a), and in order to facilitate its "reasonably complete and effective enforcement," we hold that a private investor who has been injured by a violation of this section may bring an action in his own behalf, and he does not have to wait for the SEC to bring it for him. In so holding we are much influenced by the sound policy considerations set forth by Judge Frank in his dissent in Subin v. Goldsmith, 2 Cir., 1955, 224 F.2d 753, 767 (dictum), where he said:

"An economy like ours, which thrives on the fact that thousands of persons of modest means invest in corporate shares, will be poorly served if our courts regard with suspicion all minority stockholders' suits and therefore, out of desire to discourage such suits, apply to them unusually strict pleading rules, thus tending to thwart judicial inquiries into the conduct of wrongdoing controlling stockholders. The unfortunate consequences will be that those in control may be immunized from effective attacks on their misdeeds, and, as a result, the small investors will lose confidence in all corporate managements, the honest as well as the dishonest."

But does a stockholder who has not himself given a proxy pursuant to false and misleading solicitation have standing to assert such right of action? This question is squarely presented here. These appellants do not specifically allege that they themselves were misled by the appellees or that they gave appellees any proxies at all. As we have noted above, the right sought to be protected by federal law is the right to full and fair disclosure in corporate elections. Therefore, it is not important whether or not the complaining stockholders were deceived—they could suffer equally damaging injury to their corporate interests merely because other shareholders were deceived in violation of federal law. Accordingly, they should be entitled to protect themselves against such violations to the same extent as if they, themselves, were the direct victims of the unlawful deception. We are in agreement with Prof. Loss, of the Harvard Law School, who, in his excellent article entitled The SEC Proxy Rules in the Courts, supra, pp. 1058-1059, said:

"This question (of standing) has received only the scantiest attention in the cases. Two cases did disqualify stockholders when they had not themselves been 'taken in' by the alleged violations, but one of the decisions was based on faulty analysis (citation omitted) and the other on none at all (citation omitted). On the other hand the question does not seem to have been raised in any other cases under the SEC Rules, although in most of them it can be inferred from the very hostility between the parties that the plaintiff did not give a proxy to anybody in the defendant's camp. Moreover, in principle it is difficult to see why there should be any limitation of this sort on the private right of action under Section 14(a). The remedy is based not on any concept of the proxy attorney's violation of a fiduciary obligation to his principal, but on the premises that either side in a contested solicitation has a legitimate interest, in view of the statutory purpose, to cry 'foul' against the other (citation omitted)."

Of the two cases to which he refers, only one, Textron, Inc. v. American Woolen Co., D.C.D.Mass.1954, 122 F.Supp. 305, 307–310, 68 Harv.L.Rev. 920–922 (1955) is a federal case. There, an action was brought in the District Court of Massachusetts to enjoin the continuation of a stockholders' meeting on the grounds, *inter alia,* of improper proxy solicitations in violation of Section 14(a) of the Ex-

change Act. The plaintiff attacked proxies given to a so-called "Smith Group" on the grounds that they had been obtained by misleading statements with regard to how the proxies were to be voted, i. e., against the incumbent management. Plaintiff himself had not given a proxy to the Smith Group. The Court, assuming that the solicitations had been misleading, held that the Smith proxies were not needed to re-elect the management, and, in fact, even had said proxies been voted for the opposition slate, management still would have won the election. In holding the proxies valid for quorum purposes only, the Court then went on to say, at pages 307–308 of 122 F.Supp. (dictum):

> "Under these circumstances, whatever criticism the stockholders who gave their proxies to the Smith group, which stockholders do not include the plaintiff, may have a right to direct against Smith, it seems to me that the present plaintiff has only one possible complaint * * *; namely, whether it was proper to consider the Smith proxies in determining the existence of a quorum. * * * I do not question that in a proper case a private party affected may complain of a violation of the rules of the Securities and Exchange Commission. (Citations omitted.); but this plaintiff, on the circumstances alleged, was not such."

This language, being somewhat speculative at best, is only dictum, and consequently, this case, properly considered, stands merely for the proposition that a violation of the SEC proxy rules does not necessarily invalidate the proxies *in toto.* The other case which Prof. Loss cites is Commonwealth ex rel. Laughlin v. Green, 3 S.E.C.Jud.Dec. 221 (Pa.C.P.1944). This decision was affirmed by the Pennsylvania Supreme Court at 351 Pa. 170, 40 A.2d 492 (1945) *without mention of the SEC proxy rules,* thus greatly diminishing its effect as a legal precedent bearing on this issue. Accordingly, as we have indicated, we have no real difficulty in holding that these appellants have standing to assert a violation of Section 14(a) even though they do not allege that they were themselves deceived or gave any proxies to the appellees.

Having determined, therefore, that Section 14(a) creates a right of action in private parties which these appellants have standing to assert, we are now faced with the more difficult question of determining whether the complaint states a claim thereunder upon which the relief demanded can be granted. If not, does it state a claim upon which any relief can be granted under federal law? What is the fundamental nature of the federal "right" created by Section 14(a)? At the outset, we are faced with a decision by the Second Circuit in Howard v. Furst, 2 Cir., 1956, 238 F.2d 790, certiorari denied 1957, 353 U.S. 937, 77 S.Ct. 814, 1 L.Ed.2d 759, which indicated that even if Section 14(a) does create a right of action on behalf of the private investor, it does not create a right of action on behalf *of the corporation* which a stockholder can assert derivatively.[30] Although Howard v. Furst, supra, is virtually indistinguishable from the case at bar, we say, with deference, that we do not find it necessary to reach this issue upon the facts here alleged. For the claim asserted under federal law is not one asserted only on behalf of the corporation. It is true that much of the *damage* which these appellants allege, and the *relief* which they seek, is secondary and derivative to them only through injury to the corporation. And for reasons that will appear more fully below, we hold that the scope of the federal right created by Section 14(a) does not encompass relief for such damages. But the federal *right* which allegedly has been invaded here is the right to the free exercise of the corporate

30. This decision has come in for its share of the criticism from the commentators in the law reviews. See, e. g., Loss, The

SEC Proxy Rules in the Courts, supra pp. 1060–1062; 70 Harv.L.Rev. 1493 (1957); 105 U.Pa.L.Rev. 1016 (1957).

franchise. This is a right which only can be enjoyed and exercised by the individual shareholder and, therefore, is personal and primary to him.[31] The fact that a violation of an individual right might also have caused damage to a corporation, generally does not prevent an injured shareholder from bringing an action in his own behalf. Eden v. Miller, 2 Cir., 1930, 37 F.2d 8, 9–10; Ritchie v. McMullen, 6 Cir., 79 F. 522, 533, certiorari denied 1897, 168 U.S. 710, 18 S.Ct. 945, 42 L.Ed. 1212; Horwitz v. Balaban, D.C.S.D.N.Y.1949, 112 F.Supp. 99, 102; Chase Nat. Bank v. Sayles, D.C.D.R.I. 1927, 30 F.2d 178, 183; accord, Hyams v. Calumet & Hecla Mining Co., 6 Cir., 1915, 221 F. 529, 542–543. Of course, the general rules set out above, in the last analysis, are merely legal formalisms in which the Court elects to clothe its choice of the underlying policy considerations upon which the real basis of decision must rest. In characterizing this action as "derivative" or as "individual," basically we are faced with the problem of determining whether to emphasize the *right* violated, or the *damage* which resulted. In this case, we choose to lay emphasis upon the right violated, which is individual and primary. We make this choice, because as will appear more fully below, we are of the opinion that the federal courts are without jurisdiction to grant much of the purely derivative relief necessary to redress the damage alleged. Therefore, the "derivative aspect" of this case is relatively unimportant. Under the circumstances, it would be unduly burdensome to place upon a complaining stockholder the restrictions and limitations of a derivative action.

From the early days of our government, it has been the express purpose of the federal judiciary, wherever possible, to provide a remedy for the invasion of a vested legal right created by federal law.[32] In accordance with this high purpose, through the years, many cases have held that where a right created by federal law has been invaded, the federal courts may use any available remedy to make good the wrong done. See, e. g., Bell v. Hood, supra; Board of Com'rs of Jackson County, Kan. v. United States, 1939, 308 U.S. 343, 349–350, 60 S.Ct. 285, 84 L.Ed. 313; Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 1930, 281 U.S. 548, 569, 50 S.Ct. 427, 74 L.Ed. 1034; United States v. Kaufman, 1877, 96 U.S. 567, 569–570, 24 L.Ed. 792. Our problem, then, is to determine what remedy is available to redress the violation of the federally protected right here alleged. As we have discussed above,[33] the legislative history of Section 14(a) shows that the personal right sought to be protected thereby is the right to full and fair disclosure, which best could be insured through the utilization of prospective, rather than retrospective, sanctions. Obviously, the most effective sanction would be one which tends to prevent, rather than to remedy, the injection of misleading statements into a proxy fight. And, indeed, the remedies given in most cases dealing with this section have favored prospective relief wherever possible. The Act itself expressly authorizes the use of the injunction to prevent dissemination of misleading proxy material.[34] There seems to be general acknowledgment that the Courts have the power also to enjoin the use of proxies already obtained through false and misleading solicitation,[35] and some courts have gone

---

31. See, Personal Industrial Bankers, Inc. v. Citizens' Budget Co., 6 Cir., 80 F.2d 327, 328, certiorari denied sub nom. McConnaughey v. Personal Industrial Bankers, Inc., 1935, 298 U.S. 674, 56 S.Ct. 939, 80 L.Ed. 1396. See also, Loss, Securities Regulation 525–526 (1951).

32. See, e. g., Marbury v. Madison, 1803, 1 Cranch 137, 163–164, 5 U.S. 137, 163–164, 2 L.Ed. 60.

33. At pages 209–212, supra.

34. Section 21(e), 15 U.S.C.A. § 78u(e).

35. E. g., S. E. C. v. May, 2 Cir., 1956, 229 F.2d 123, 55 A.L.R.2d 1123; Mack v.

so far as to imply Congressional authorization to postpone a corporate election, in whole or in part, where necessary to protect the right to full and fair disclosure.[36] But is the federal right here under consideration so broad in scope as to encompass recission of an already consummated corporate transaction where there is no diversity of citizenship between the parties, and subject matter jurisdiction is predicated only upon Section 27 of the Act, or the broader "federal question" grounds embodied in 28 U.S.C. § 1331? Stated more concisely, what are the outside dimensions of the federal question raised by an alleged violation of Section 14(a) of the Exchange Act? In answering this question the cases are of little help.[37] On the one hand, some decisions indicate in an inconclusive sort of way, that the federal courts do have jurisdiction, apart from diversity of citizenship, to render such retrospective relief in proper circumstances. An example of this line of cases is the very recent decision in Mack v. Mishkin, supra, which, in denying a preliminary injunction to restrain the use of proxies solicited in violation of the proxy rules, indicated that a private party later on could bring an action to set aside the election if, indeed, the proxy solicitation had been improper under federal law. On the other hand, exemplifying the line of cases going the other way, is the District Court decision in Howard v. Furst, supra, note 36, where Judge Walsh, in addition to indicating that Section 14(a) did not create a purely derivative right of action, held:

"There is no basis in the statute or its legislative history for an implication that Congress intended to give an individual stockholder, as an incident of his protection by proxy statement regulations, the right to rescind completed corporate transactions whenever based upon votes solicited by such statements, or the right to enforce the corporation's claim for waste. The drastic nature of such relief and the ease with which it could have been expressly authorized if Congress had so intended all argue against such implication." 140 F.Supp. at page 513.

We are constrained to agree with Judge Walsh that there is no evidence of any sort that Congress intended to create a right of the dimensions here urged by these appellants. But the fact, that Congress may not have had the instant case in mind when it enacted Section 14(a), does not altogether end the matter, for, as John Chipman Gray said in his famous lectures on the Nature and Sources of the Law,[38] in a quotation that has now become classic:

"* * * the difficulties of so-called interpretation arise when the legislature has no meaning at all; when the question which is raised on the statute never occurred to it; when what judges have to do is, not to determine what the legislature did mean on a point which was present in its mind, but to guess what it would have intended if the point had been present."

Mishkin, supra (by implication); Central Foundry Co. v. Gondelman, D.C.S.D.N.Y. 1958, 166 F.Supp. 429; S. E. C. v. Okin, D.C.S.D.N.Y.1944, 58 F.Supp. 20.

36. E. g., Howard v. Furst, D.C.S.D.N.Y. 1956, 140 F.Supp. 507, 513, affirmed 2 Cir., 238 F.2d 790, certiorari denied 1957, 353 U.S. 937, 77 S.Ct. 814, 1 L.Ed. 2d 759; and see e. g., Dunn v. Decca Records, Inc., D.C.S.D.N.Y.1954, 120 F. Supp. 1, 3 (held, stockholders' meeting could be enjoined because of false and misleading proxy solicitations only upon a showing of the "clear and convincing"

necessity therefor); S. E. C. v. Transamerica Corp., D.C.D.Del.1946, 67 F. Supp. 326, 329, modified and affirmed 3 Cir., 1947, 163 F.2d 511, certiorari denied 1948, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 418; S. E. C. v. O'Hara Reelection (or Proxy) Committee, D.C.D. Mass.1939, 28 F.Supp. 523.

37. For an excellent discussion of the cases bearing on this point, see, Loss, The SEC Proxy Rules in the Courts, supra, pp. 1075–1078.

38. Sec. 370, p. 165.

And this is precisely the problem now before us. In attempting to solve it, and to to delimit the scope of the federal right created by Section 14(a), we are faced with two opposing lines of legal analysis. On the one hand, we are tempted to follow the doctrine of Bell v. Hood to its logical conclusion and say that once a violation of a federally protected right is established, then this raises jurisdiction in the federal courts to provide a complete remedy for the damages, however remote, that result from such violation. *Ubi jus, ibi remedium.*[39] Prof. Loss has made a most persuasive argument along this line, urging that the difference between the prospective relief of enjoining the *use* of improperly solicited proxies, and the retrospective relief of recission of completed corporate transactions based upon the use of such invalid proxies, is merely a difference of degree rather than kind.[40] Therefore, while he concedes that ofttimes it is proper, as a matter of equitable discretion, that a federal court decline to grant retrospective relief of the kind here demanded, he argues that it is inconsistent so to decline on the ground of lack of subject matter jurisdiction.

On the other hand, the question of federal jurisdiction often turns merely on determinations of degree rather than kind. For example, we have held in diversity cases that the requisite jurisdictional amount is determined by the amount claimed by the plaintiff *in good faith.*[41] Where does good faith end and bad faith begin? The federal judiciary operates, to a greater or lesser extent, upon the theory that, apart from diversity of citizenship, its power is limited to cases and controversies presenting questions "arising under the laws of the United States." It is often very difficult to determine whether or not an issue arises under federal law or state law. Sometimes, as here, elements of both are present. As the United States Supreme Court, in Gully v. First Nat. Bank, 1936, 299 U.S. 109, 117–118, 57 S.Ct. 96, 100, 81 L.Ed. 70, speaking through Mr. Justice Cardozo, held:

"This Court has had occasion to point out how futile is the attempt to define 'cause of action' without reference to the context. (Citation omitted.) To define broadly and in the abstract 'a case arising under the Constitution or laws of the United States' has hazards of a kindred order. What is needed is something of that common-sense accommodation of judgment to Kaleidoscopic situations which characterizes the law in its treatment of problems of causation. One could carry the search for causes backward almost without end. (Citation omitted.) Instead, there has been a selective process which picks the substantial causes out of the web and lays the other ones aside. As in problems of causation, so here in the search for the underlying law. If we follow the assent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself, with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by."

Therefore, unless we are to abandon altogether any concept of a dichotomy of federal and state jurisdiction in this area, it is clear that a line must be drawn somewhere to mark the limits of federal jurisdiction.

So, again, we are faced with the knotty problem of choosing between countervail-

---

39. See, Texas & Pac. Ry. Co. v. Rigsby, supra, 241 U.S. at pages 39–40, 36 S.Ct. at page 484.

40. Loss, The SEC Proxy Rules in the Courts, supra, pp. 1072–1083.

41. E. g., Firemens' Fund Ins. Co. v. Railway Express Agency, 6 Cir., 1958, 253 F.2d 780, 782.

ing policy considerations. On the one hand, if we should decide to limit federal judicial power, as a jurisdictional matter, purely to a determination of the *validity* of allegedly improperly solicited proxies, and to leave to the state courts their separate and exclusive jurisdiction to consider the consequent *effects* of such a determination, we would throw open the door to all the horrors of split, or piecemeal, litigation. In addition, we would be eating away at the vital principle that for every federal right, there should be a complete federal remedy. On the other hand, should we hold that the federal courts have jurisdiction, quite apart from diversity of citizenship, to determine matters of state law which are wholly independent of the federal issues before the Court, we would erode even further the equally vital principle of separate sovereignties which underlies the Constitutional and statutory definitions of "the judicial power of the United States." Furthermore, in these days of already overburdened federal trial dockets, it might well be a disservice to the federal judiciary to extend its domain into an area so predominantly governed by state and local law. This, we are unwilling to do.

In making this choice, we are constrained to agree with the line of reasoning set forth by Justice Cardozo in the Gully case, and therefore hold that we are without jurisdiction to grant the relief sought in this complaint insofar as it seeks to rescind corporate transactions already consummated because of allegedly improperly solicited proxies. In reaching this decision, we are deciding that federal jurisdiction must end with the holding of a contested proxy election, that the right created by Section 14(a) of the Exchange Act is only broad enough to permit consideration of the *validity* of the proxies solicited in violation thereof, but it is not broad enough to permit the federal courts to determine the consequent *effects* of the validity or invalidity of said proxies. This latter determination raises issues which concern matters of local law alone. In our opinion, this is the cleanest joint

at which to amputate the long arm of federal law in this area.

In this case it is undoubtedly true that a determination of the federal question involved, that is, whether the proxies in question are valid or invalid, will greatly affect the relief which will be available to these appellants under the local law of Michigan. But as Justice Cardozo said in the Gully case, "countless claims of right can be discovered to have their source or their operative limits" in the provisions of federal law. This is not to say, however, that they arise under federal law. In this case, if we were to consider the relief sought, the basic questions to be resolved would be questions having their genesis in the corporation law of Michigan; such questions, for example, as the participating quorum necessary to transact the business under consideration and thereby to make the election a valid one; the voting majority necessary to determine the issue voted upon; does this mean a majority of all stockholders or merely a majority of the participating quorum; what is the scope and effect of the *de facto* doctrine as affecting proxies declared invalid under federal law? Also involved would be myriad questions concerning the eligibility of voters and the validity of the proxies (quite apart from the federal question going to this point), and other questions relating to the casting of votes. The above is not even an adequate attempt at enumerating merely the fundamental issues governed by state law which certainly would have to be determined in recounting the ballots and passing upon the validity of the election here sought to be set aside. It merely is intended to give a small idea of the immense preponderance of questions of state law which would have to be interpreted and applied in order to grant the relief sought. The preponderance, indeed, is so great that the federal question involved, even though it probably would be material to the ultimate outcome of the election, is really negligible in comparison. We agree with Judge Medina in Howard v. Furst, supra, 238 F.2d at page 794, in holding that the controversy as to

the interpretation to be given to Section 14(a) of the Exchange Act, is merely collateral to any consideration of the validity of the corporate election involved. Therefore, in accordance with the rationale of the Gully case, we have no jurisdiction to consider rescinding the election herein on the basis of a "claim arising under the Constitution or laws of the United States," or, more specifically, under Section 14(a) of the Exchange Act.

 Nor will the doctrine of federal pendent jurisdiction be of any aid to these appellants in this regard. That doctrine, first announced in Siler v. Louisville & Nashville R. Co., 1909, 213 U.S. 175, 191, 29 S.Ct. 451, 53 L.Ed. 753, and later re-affirmed and explained in Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 589, 77 L.Ed. 1148, provides that where a federal court properly has jurisdiction of a cause of action based on alternative theories, one arising under federal law, and the other arising under state or local law, then it has jurisdiction to dispose of the entire controversy even where the federal questions are decided adversely to the party asserting jurisdiction. However, this doctrine is limited to the case where a "single cause of action" is presented and in no way changes the universal rule that a federal court, in non-diversity cases, cannot assume jurisdiction of a separate and distinct non-federal cause of action merely because it is joined in the same complaint with a cause of action arising under federal law. Hurn v. Oursler, supra; American Fidelity & Cas. Co. v. Owensboro Milling Co., 6 Cir., 1955, 222 F.2d 109, 110–111; French Renovating Co. v. Ray Renovating Co., 6 Cir., 1948, 170 F.2d 945, 947; General Motors Corp. v. Rubsam Corp., 6 Cir., 65 F.2d 217, 218, certiorari denied 1933, 290 U.S. 688, 54 S.Ct. 123, 78 L.Ed.

593; accord, United Mine Workers of America v. Meadow Creek Coal Co., 6 Cir., 263 F.2d 52, 59–60, certiorari denied 1959, 359 U.S. 1013, 79 S.Ct. 1149, 3 L. Ed.2d 1038; Emmons v. Smitt, 6 Cir., 149 F.2d 869, certiorari denied 1945, 326 U.S. 746, 66 S.Ct. 59, 90 L.Ed. 446; Dill Mfg. Co. v. Goff, 6 Cir., 1942, 125 F.2d 676, 678 (dictum); Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 1941, 118 F.2d 64, 68. If "substantially identical facts" [170 F.2d 947] will support both the local and federal theories of recovery, then a single cause of action is presented. If, however, additional facts are necessary to support the local law theory, then separate and distinct causes of action are joined in the same complaint. Hurn v. Oursler, supra; American Fidelity & Cas. Co. v. Owensboro Milling Co., supra; French Renovating Co. v. Ray Renovating Co., supra. The present controversy falls into the latter category; i. e., more facts are necessary to support a recission of the election under state law than are necessary to establish the fact that the proxies under attack were solicited by the use of false and misleading material. Therefore it does not meet the test of the Hurn case, and the federal courts are not warranted in retaining jurisdiction to dispose of the separate questions of state law.

 But our holding that the federal courts are without jurisdiction to grant the relief demanded in this complaint does not mean, necessarily, that the motion to dismiss because of failure to state a claim upon which relief can be granted should be sustained. Such motions, it must be remembered, have been characterized as "mere formal motions directed only to the face of the complaint."[42] As a general rule, they are not favored[43] and should be granted sparing-

42. Chicago & N. W. Ry. v. First Nat. Bank of Waukegan, 7 Cir., 1952, 200 F. 2d 383, 384; Tauzin v. St. Paul-Mercury Indemnity Co., 5 Cir., 1952, 195 F.2d 223, 224; Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., 7 Cir., 1950, 183 F.2d 630, 632; Dioguardi v. Durning, 2 Cir., 1944, 139 F.2d 774, 775.

43. Arfons v. E. I. DuPont de Nemours & Co., 2 Cir., 1958, 261 F.2d 434, 435; Nagler v. Admiral Corp., 2 Cir., 1957, 248 F.2d 319, 322; Rennie & Laughlin, Inc. v. Chrysler Corp., 9 Cir., 1957, 242 F.2d 208, 213; Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., supra, note 42; Publicity Bldg. Realty Corp. v.

ly and with caution [44] only where it appears to a certainty that no set of facts could be proven at trial which would entitle a plaintiff to any relief.[45] Furthermore, if the allegations of this complaint are true with regard to the use of false and misleading material in the proxy solicitation under attack (and we must treat them as true for purposes of the instant motion [46]), all the proxies so solicited may well have been invalid, at least with regard to the purposes for which they were used. E.g., Central Foundry Co. v. Gondelman, D.C. S.D.N.Y.1958, 166 F.Supp. 429, 446; S.E.C. v. O'Hara Re-election (or Proxy) Committee, D.C.D.Mass.1939, 28 F.Supp. 523, 525; accord, Mack v. Mishkin, D.C. S.D.N.Y.1959, 172 F.Supp. 885, 889. See also, Loss, Securities Regulation 544 (1951). This being the case, it would seem, at the very least, that these appellants have stated a claim for a judgment declaring either the validity or the invalidity of said proxies, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.[47] Nor will the fact that they have not, in express terms, demanded declaratory relief make any difference in

this regard. It has long been established law that, in equity, a plaintiff is entitled to any relief appropriate to the facts alleged in the bill and supported by the evidence, even where he has not prayed for such relief.[48] In Waterman v. Canal-Louisiana Bank & Trust Co., 1909, 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80, this general rule was applied expressly to the case where a plaintiff demanded an accounting in his bill and was given a declaratory judgment instead although he had not sought declaratory relief.[49] Furthermore, Fed.R.Civ.P. 54(c) specifically provides:

"(c) Demand for Judgment. * * Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings.*" (Emphasis added.)

And in recent years, the federal courts have given this rule the broad application that it seems to demand, both in actions at law and in equity.[50] We have agreed

Hannegan, 8 Cir., 1943, 139 F.2d 583, 586–587.

44. Kingwood Oil Co. v. Bell, 7 Cir., 1953, 204 F.2d 8, 13.

45. Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80; Sherman v. Air Reduction Sales Co., supra, note 6, 251 F.2d at pages 546–547.

46. E. g., United States v. New Wrinkle, Inc., 1952, 342 U.S. 371, 376, 72 S.Ct. 350, 96 L.Ed. 417; Polk Co. v. Glover, 1938, 305 U.S. 5, 9, 59 S.Ct. 15, 83 L.Ed. 6; Spears v. Spears, 6 Cir., 162 F.2d 345, 347, certiorari denied 1947, 332 U.S. 768, 68 S.Ct. 78, 92 L.Ed. 353.

47. Indeed, the federal courts may well be the only forums in which such relief can be obtained by a plaintiff in the first instance in view of the "exclusive jurisdiction" provision of 15 U.S.C.A. § 78aa, supra, note 1. But for a thorough discussion of this problem see, Loss, The SEC Proxy Rules and State Law, 73 Harv.L.Rev. 1249, 1253–1277 (1960).

48. Bemis Bros. Bag Co. v. United States, 1933, 289 U.S. 28, 34, 53 S.Ct. 454, 77 L.Ed. 1011 (dictum); Lockhart v. Leeds,

1904, 195 U.S. 427, 437, 25 S.Ct. 76, 49 L.Ed. 263; State of Kansas v. State of Colorado, 1902, 185 U.S. 125, 145, 22 S. Ct. 552, 46 L.Ed. 838 (dictum); Hopkins v. Grimshaw, 1897, 165 U.S. 342, 357–358, 17 S.Ct. 401, 41 L.Ed. 739; Tyler v. Savage, 1892, 143 U.S. 79, 98, 12 S.Ct. 340, 36 L.Ed. 82; Jones v. Van Doren, 1888, 130 U.S. 684, 691–692, 9 S. Ct. 685, 32 L.Ed. 1077; State of Texas v. Hardenberg, 1869, 10 Wall. 68, 86, 77 U.S. 68, 86, 19 L.Ed. 839; Tayloe v. Merchants' Fire Ins. Co. of Baltimore, 1849, 9 How. 390, 406, 50 U.S. 390, 406, 13 L.Ed. 187; Walden v. Bodley, 1840, 14 Pet. 156, 164, 39 S.Ct. 156, 164, 10 L.Ed. 398.

49. Accord, Dotschay for Use and Benefit of Alfonso v. National Mut. Ins. Co. of D. C., 5 Cir., 1957, 246 F.2d 221, 223 (*held*, court could give a declaratory judgment even where complaint demanded only money damages).

50. E. g., Neff v. Western Cooperative Hatcheries, 10 Cir., 1957, 241 F.2d 357, 363 (damages awarded by court exceeded *ad damnum*); Whittaker v. Wall, 8 Cir., 1955, 226 F.2d 868, 872 (only le-

implicitly to such broad interpretation in the Sixth Circuit.[51] Accordingly, we have no difficulty in holding that these appellants may be entitled to declaratory relief under the facts alleged in their complaint. Therefore, the motion to dismiss for failure to state a claim upon which relief can be granted should be overruled at this stage of the proceedings.

There remains now for disposition only two formal grounds upon which these appellees urge that the present complaint be dismissed. The first of these is that same does not comply with the mandatory requirements of Fed.R.Civ.P. 23 (a) and (b). Subsection (a) of that rule deals with the various types of class action, and appellees argue that if the present action is really a class action, as appellants assert, then appellants do not adequately represent the class of stockholders whose interests they seek to serve. As we have ruled above, the federal claim involved here is one that is personal to the individual stockholder, i. e., the right to cry "foul" in an improperly administered corporate election regardless of whether or not the complaining shareholder personally had been duped. And the most that the federal courts can do, after the election has been held, is declare whether or not the cry of "foul" is founded or unfounded in fact and law. This being the case, we see no reason why these appellants cannot adequately assert the limited right here involved on behalf of the class which they seek to represent. Furthermore, as we also have held, since the purely derivative relief sought in this complaint is not within the jurisdiction of the federal courts to grant, we do not find it necessary to impose upon these appellants the

limitations and restrictions of a derivative action which are embodied, in part, in Rule 23(b). Accordingly, the motion to dismiss for failure to comply with Fed. R.Civ.P. 23(a) and (b) is overruled.

The final ground upon which appellees seek dismissal of this complaint is failure to join indispensable parties. This, of course, refers to Curtiss-Wright and Utica-Bend Corporations. However, since we have held that we do not have jurisdiction to grant any of the relief that might affect the interest of either of these parties, this issue is no longer in the case.

Accordingly, since we are unable to find any ground upon which to support the action of the District Court in this cause, it is remanded for proceedings not inconsistent with the views here expressed and the Court below is reversed.

SHACKELFORD MILLER, Jr., Circuit Judge (concurring).

I concur in the ruling of the majority opinion that the judgment of the District Court should be reversed, and that the case be remanded to the District Court for hearing and determination of declaratory judgment relief with respect to the validity or invalidity of the proxies, as encompassed in appellants' amended complaint.

The majority opinion holds that the District Court lacked jurisdiction to grant appellants' demand that, in the event certain proxies be found to have been illegally solicited and obtained, the corporate transactions referred to be rescinded and set aside. I am in accord with the ruling that appellants are not entitled to the requested relief of rescis-

gal relief demanded, legal and equitable relief awarded); Driggers v. Business Mens' Assurance Co. of America, 5 Cir., 219 F.2d 292, 297, 299, certiorari denied 1955, 349 U.S. 946, 75 S.Ct. 874, 99 L. Ed. 1272 (*held*, legal relief awarded by the court could exceed legal relief demanded); Fanchon & Marco, Inc. v. Paramount Pictures, Inc., 2 Cir., 1953, 202 F.2d 731, 734, 36 A.L.R.2d 1336

(*held*, equitable relief could be awarded although only legal relief was demanded); Kansas City, St. L. & C. R. Co. v. Alton R. Co., 7 Cir., 1941, 124 F.2d 780, 783 (*held*, legal relief could be awarded even though only equitable relief had been demanded).

51. Cf., Jacobson v. Coon, 6 Cir., 1948, 165 F.2d 565.

sion, even though certain proxies may be found to have been illegally solicited and used, but I do not base the ruling upon lack of jurisdiction.

The District Court either had or did not have jurisdiction to hear and consider this case, which question must be decided as of the time when the action was filed. Mullen v. Torrance, 9 Wheat. 537, 539, 6 L.Ed. 154; St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845. I agree that it is correctly held that jurisdiction existed under the provisions of the Securities Exchange Act of 1934, Sec. 78aa, Title 15 U.S.C.A. If jurisdiction exists it is not a contingent jurisdiction or a partial one. St. Paul Mercury Indemnity Co. v. Red Cab Co., supra, 303 U.S. 283, 58 S.Ct. 586. Having taken jurisdiction in the case, jurisdiction continued in the Court to enable it to dispose of all issues raised by the pleadings. Ober v. Gallagher, 93 U.S. 199, 206, 23 L.Ed. 829; Hood ex rel. North Carolina Bank & Trust Co. v. Bell, 4 Cir., 84 F.2d 136, 137; Wichita Railroad & Light Co. v. Public Utilities Comm., 260 U.S. 48, 54, 43 S.Ct. 51, 67 L.Ed. 124; United Fuel Gas Co. v. Railroad Comm., 278 U.S. 300, 307, 49 S.Ct. 150, 73 L.Ed. 390.

It may be that only partial relief or no relief will be eventually granted, but this is not because of lack of jurisdiction, but because the particular facts of the case and the applicable law as construed by the Court do not entitle appellants to all of the relief demanded. Di Giovanni v. Camden Fire Ins. Ass'n, 296 U.S. 64, 69, 56 S.Ct. 1, 80 L.Ed. 47.

I am of the opinion that jurisdiction existed in the District Court to consider appellants' complaint, including their prayer for rescission, but that rescission was correctly denied on the merits, in that (1) the statute does not provide retroactive relief of that nature, and (2) in his balancing of the equities under the particular facts of the case, the District Judge did not abuse his discretion in denying such relief. Hecht Co. v. Bowles, 321 U.S. 321, 329–331, 64 S.Ct. 587, 88 L.Ed. 754; Jimenez v. Barber, 9 Cir., 252 F.2d 550, 554; Di Giovanni v. Camden Fire Ins. Ass'n, supra, 296 U.S. 64, 70, 73, 56 S.Ct. 1.