**WALSH AND LEVINE, a partnership, Plaintiff,**

v.

**The PEORIA AND EASTERN RAILWAY COMPANY, the New York Central Railroad Company and the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, Defendants.**

United States District Court
S. D. New York.
Oct. 9, 1963.

Laurence W. Levine, New York City, for plaintiff; Jay Levine, New York City, of counsel.

Gerald E. Dwyer, New York City, for defendants; Jerome H. Shapiro, New York City, of counsel.

TYLER, District Judge.

On defendants' motions to dismiss the complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted, the facts recited are as appear from the complaint.

The plaintiff in this action is a law partnership which holds common stock of defendant Peoria and Eastern Railway Company ("Peoria"). Peoria common stock is traded on the New York Stock Exchange. Defendant New York Central Railroad Company ("Central") controls Peoria through direct ownership of stock and through another Central controlled corporation, the Cleveland, Cincinnati, Chicago and St. Louis Railway Company ("St. Louis"), the third defendant.

■ Early in 1963 plaintiff organized an insurgent "Stockholders Protective Committee", which hoped to elect one of Peoria's five directors through use of Peoria's system of cumulative voting. Peoria was to hold its annual stockholders' meeting on April 12, 1963, at which directors were to be elected for the ensuing year. The committee obtained a list of Peoria's stockholders from that company's transfer agent, which list was certified to be correct as of March 19, 1963. On that same date the committee mailed one set of documents to each of the some 225 names and addresses with which it had been supplied, soliciting their proxies for the election of Robert L. Levine, a partner in plaintiff firm, as director.

About 50 of the names given were "street names", i. e. stockbrokerage houses. Plaintiff had no way of knowing to what extent, if any, these houses were the beneficial owners of the stock listed in their names; if the houses held to the use of others, plaintiff had no way of knowing how many beneficial holders each "street name" stood for.

Plaintiff, therefore, did not immediately furnish the brokers with sufficient numbers of proxy solicitations; instead, it sent just one set to each record holder. It did this because it alleges that it is the custom and practice in the brokerage

community for each broker holding stock to the use of others, upon receipt of one set of solicitation materials, to inform the solicitor of how many sets will be required to transmit one to each of those for whose benefit he holds. This "custom", if indeed it is such, obviates the need for proxy solicitors to initially send large numbers of expensive solicitation materials to each brokerage firm, on the mere chance that they might be required for transmittal to possible beneficial owners, and, indeed, with the possibility still remaining that there will not be enough to go around.

Some of the 50-odd houses promptly requested additional copies. Twenty-one houses made no such request; four others did, but only so very shortly before the meeting as to be of no value in the contest, to either the beneficial owners or the plaintiff. The complaint further alleges that plaintiff has since learned that all of the houses in these latter groups held to the use of undisclosed principals.

The complaint also alleges that 18 of these same houses voted some or all of the stock held in their names for the management's candidates, either without the beneficial owners' permission, or with such permission given only on the basis of management's solicitation, or with such permission from those who received the insurgents' solicitation too late for reasonable action.

At the April 12th meeting the insurgent candidate explained these circumstances, and moved for an adjournment to allow the delinquent houses "to perform their duty". This motion was defeated in a vote in which the challenged proxies were permitted to vote, over objection. The five management candidates were then elected.

Even if the challenged proxies had not been voted, the motion to adjourn would not have carried, and it would seem that the complete management slate would still have been elected. If, however, a substantial number of the contested proxies had been voted for the insurgents, their candidates would have won.

Plaintiff asks the court, subject to proof of this state of facts, to declare that the proxies given to management by the 18 houses were invalid, and further to declare the election to be of no force and effect.

If plaintiff had supplied the brokers with enough sets of proxy solicitation material, the brokers would have owed plaintiff a duty, upon payment of costs and expenses, to transmit such material to each of the beneficial holders. This duty arises from Section 14 of the Securities Exchange Act of 1934 (15 U.S.C. § 78n)), and the Securities and Exchange Commission ("S.E.C.") regulations adopted pursuant thereto.

Section 14(a) provides that it is unlawful for any person to solicit proxies in contravention of S.E.C. rules. S.E.C. Rule 14a–2 (17 C.F.R. § 240.14a–2, Supp. 1963) provides, *inter alia*, that the S.E.C. rules, including a requirement in Rule 14a–11 that proxy solicitors file a statement of identification and interest in the contest:

> "apply to every solicitation of a proxy with respect to securities listed and registered on a national securities exchange, * * * except the following:
>
> *  *  *  *  *  *
>
> "(b) Any solicitation by a person in respect to securities carried in his name or in the name of his nominee (otherwise than as voting trustee) or held in his custody, if such person:
>
> "(1) Receives no commission or remuneration for such solicitation, directly or indirectly, other than reimbursement of reasonable expenses;
>
> "(2) Furnishes promptly to the person solicited a copy of all soliciting material with respect to the same subject matter or meeting received from all persons who shall furnish copies thereof for such purpose and who shall, if requested, defray the reasonable expenses to be incurred in forwarding such material; and

"(3) In addition, does no more than impartially instruct the person solicited to forward a proxy to the person, if any, to whom the person solicited desires to give a proxy, or impartially request from the person solicited instructions as to the authority to be conferred by the proxy and state that a proxy will be given if no instructions are received by a certain date."

Thus, if brokers transmit some but not all proxy solicitations to those for whose benefit they hold in street name, they are acting in contravention of the Commission rules if they fail to fulfill the duties required of active proxy solicitors. That is, apparently, the situation alleged here.

Moreover, where brokers so violate Section 14(a) and the Rules thereunder, they must, *ipso facto*, violate Section 14(b), which provides that it is unlawful for brokers to give proxies on stock held in street name in violation of Commission rules on the subject. This is so although the Commission has made no rules specifically under 14(b), because the 14(a) rules quoted above do regulate brokers in the solicitation of proxies for stock which they hold in street name.[1] To hold otherwise would be to say that in proxy contests brokers may completely, but not partially, bypass the beneficial holders.

Section 14 thus benefits all stockholders of companies listed on the national exchanges by ensuring that the electoral rights of shareholders will not be taken away, nor their power to solicit proxies from other beneficial holders weakened, by arbitrary actions of brokers with bare legal title.

It is a hornbook maxim, based upon bedrock policy considerations in a society founded upon individual rights, that where a duty has been created by statute for the benefit of a special class, a member of that class may maintain a private action to enforce the duty. The Sixth Circuit has recognized a private right of action by shareholders under Section 14,[2] and in Brown v. Bullock this court, in the course of finding a private claim to lie under the proxy provisions of the Investment Company Act of 1940, noted that, "A private right of action under the proxy regulations of the 1934 Act is well-established", referring to, among others, six such actions entertained by this court.[3]

In this view of the matter, there is no present need to deal with the more doubtful question of whether the regulations made by the New York Stock Exchange regarding the distribution of competing proxy materials can, by reason of the regulated nature and regulatory function of the national securities exchanges under the various securities acts, establish public duties on the part of the brokers which may give rise to private suits cognizable by this court.[4]

Equitable relief is sought on the basis of the failure of the corporate electoral process, which in turn is alleged to have resulted from the failure of the brokerage houses to comply with Section 14. Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa) gives the district courts exclusive jurisdiction over "all suits in equity * * * brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." Since I hold that Section 14 of the Securities Exchange Act of 1934 creates duties which may be enforced by private suits, this court has jurisdiction over the subject matter of the action. Accordingly, the motion of defendants under Rule 12(b) (1) of the

---

1. See 2 Loss, Securities Regulation (2d Ed. 1961) at 876.

2. Dann v. Studebaker-Packard Corporation, 288 F.2d 201 (6th Cir., 1961).

3. 194 F.Supp. 207, 231 (S.D.N.Y.1961); aff'd without consideration of this point, 294 F.2d 415 (2d Cir., 1961).

4. See Exchange Rules 450–460; *Cf.* Baird v. Franklin, 141 F.2d 238 (2d Cir., 1944), cert. denied 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591.

Federal Rules of Civil Procedure to dismiss is denied.

■ Although this court has jurisdiction of the subject matter of the dispute, it does not presently have jurisdiction over all the parties in interest who are indispensable to a proper consideration and disposition of it. This is true because merely granting the plaintiff's first request for relief, invalidation of the proxies, would be futile, since as stated earlier, this would not, of itself, affect the outcome of the election. The second request for relief, invalidation of the meeting, would also be futile so long as those holding stock in street names remain free to repeat their past pattern of behavior. What plaintiff really seeks and needs for effective relief is a new meeting with a chance before it to solicit all beneficial holders of the voting stock. For this reason the brokerage houses whose actions are complained of are indispensable parties without whom this action cannot proceed, Kendig v. Dean, 97 U.S. 423, 24 L.Ed. 1061 (1878).

Moreover, since the proxies given by these houses, which are the registered owners of the securities, are in issue, such "street names" are indispensable parties to an adjudication of validity of the proxies. And, further, the five directors whose election is being challenged are, by virtue of their interest in their positions, also indispensable parties to this suit.

Whether the claim, though in substance falling within the jurisdiction of this court, is legally sufficient as pleaded is a question which would be better determined with the presence of the absent parties.

■ Because the claim under the 1934 Act is not "plainly wanting in substance", it may be that the prayer is also cognizable as stating a state-created cause of action. Such a recognition would be through the doctrine of pendent jurisdiction enunciated in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), since a claim under Section 619 of the New York Business Corporation Law, McKinney's Consol.Laws, c. 4, would seem to require no substantial supplemental proof which would not be relevant to the federal claim. Cf. Brown v. Bullock, 194 F.Supp. 207, 220 (S.D. N.Y.1961); affirmed without consideration of this point, 294 F.2d 415 (2d Cir., 1961); Phillips v. United Corp., 5 S.E.C. Jud.Dec. 445; CCH Fed.Sec.L.Rep. ¶ 90,395 (S.D.N.Y.1947). See 2 Loss, Securities Regulation, at 1006–13.

The Sixth Circuit, however, is of the opinion that state-created claims are not cognizable as pendent to a Section 14 suit. Dann v. Studebaker-Packard Corporation, 288 F.2d 201 (6th Cir., 1961). For a criticism of this result, see 2 Loss, Securities Regulation (1962 Supplement) at 20–23.

If there is pendent jurisdiction of a claim created under New York law, the broad scope of relief possible under Section 619 probably would permit relief to the extent sought, even if this court had taken the view that analogous relief under the 1934 Act in accordance with Dann v. Studebaker-Packard Corporation, *supra*, was unavailable.

Accordingly, the complaint is dismissed, with the right to plaintiff, however, to replead and bring in the additional parties defendant who, as indicated above, appear to be indispensable parties to this controversy. Plaintiff's amended complaint should be filed and served within twenty days of the date of this opinion. Defendants' motion pursuant to Rule 12 (b) (6) to dismiss for failure to state a claim upon which relief can be granted is denied without prejudice to a later renewal not inconsistent with this opinion.

Settle order.